[Civ. No. 7681. Fifth Dist. Apr. 9, 1984.]

CITY OF FRESNO, Plaintiff and Appellant, v.
THOMAS C. HARRISON et al., Defendants and Respondents.

## COUNSEL

James A. McKelvey, City Attorney, and C. William Brewer, Assistant City Attorney, for Plaintiff and Appellant.

J. Steven Lempel for Defendants and Respondents.

## OPINION

**WOOLPERT, J.**—In this condemnation case we are asked to set aside the trial judge's decision to grant a new trial after it became apparent the condemning agency had not made a timely, good-faith disclosure of the basis for its expert's opinion that there was no loss of business goodwill. We decline to do so, emphasizing the importance of full pretrial disclosure of proposed expert testimony as well as the unique position of the trial judge in reviewing the fairness of the trial.

The City of Fresno (City) sought to acquire by eminent domain certain downtown property owned by Thomas Harrison and his wife, and upon which he conducted an auto parts supply business. Harrison prior to trial moved his business within the same general downtown area, City having exercised its right to immediate possession. The Harrisons sought proper compensation, including loss of business goodwill. The date of valuation was set as October 15, 1981, the day following the filing of the complaint. (Code Civ. Proc., § 1263.110.)[1]

Before trial the parties reached a settlement as to the value of the land and improvements. Only the issue of compensation for loss of business goodwill came to trial on September 20, 1982. On September 29, 1982, the

---

[1]All statutory references are to the Code of Civil Procedure unless otherwise indicated.

jury returned its verdict, finding the Harrisons suffered no loss of business goodwill.

After the court entered judgment, the Harrisons moved for a new trial. The court granted the motion. City appeals.

In granting a new trial, the trial judge relied heavily on City's tardy retention of its expert and failure to submit a written statement of the proposed expert testimony. The failure of disclosure resulted in an inadequate cross-examination and a delayed, postverdict discovery that the expert had used certain postvaluation-date information which the court had precluded in ruling on objections to testimony.

By court order, discovery was to end on September 10, 1982. Prior to this date the Harrisons had complied with the special discovery provisions of the Code of Civil Procedure relating to exchange of valuation data and the opinion of prospective expert witnesses in eminent domain proceedings. (§ 1258.210 et seq.) Not until August 19, 1982, one month before trial, did the City first retain an expert witness on the remaining issue of loss of business goodwill. The Harrisons deposed him on September 8, 1982, just before the termination of discovery. At the deposition the expert had not yet looked over any significant portion of the data and had not formed an opinion. He wanted further information. The court observed later, "I have noted during our discussion here that any delay in the defendants' making available to the plaintiffs [*sic*] their books and records, income tax returns, et cetera, was due, if anything, to the plaintiffs [*sic*] belated request for information."

Trial commenced on September 20, 1982. During the Harrisons' case-in-chief the trial court ruled that the value of the loss of business goodwill must be projected from the date of valuation, apparently intending to limit the admissibility of certain evidence of what took place after the valuation date.

After the close of the Harrisons' case-in-chief City called its expert witness. The Harrisons objected and attempted to keep the expert from testifying for failure to comply with section 1258.250. (See § 1258.280.) Six months earlier City had filed a written demand for exchange of valuation information, but unlike the Harrisons, when the exchange was made City did not provide any goodwill information. Therefore, when the recently employed City expert was ready to testify, the Harrisons orally moved to exclude the testimony and filed a supporting written memorandum of law.

The court was reluctant to impose the severe statutory penalty of barring the testimony of City's sole expert on the question of valuation of goodwill

and suggested granting a continuance. The Harrisons felt that they would be prejudiced by a continuance, putting too much time between their side of the case and the resumption of City's evidence. The court agreed with City that section 1258.260 is less than clear about the discovery obligations on the issue of loss of goodwill.

Apparently faced with a Catch-22 problem, the court commented: "THE COURT: And I'm, as far as I'm concerned, I think that's almost inexcuseable [*sic*] as far as the City's concerned and it's not fair. Just have to think about whether it would be—whether it would be unfair by not allowing the witness to testify—whether that would grossly outweigh any unfairness or careless-ness or negligence on the part of the City in not having their expert prepared before September 8th of this year."

The court concluded that City had not been diligent, but because the Harrisons neglected to raise the matter prior to the close of their case and objected to a continuance, the court, under section 1258.290, allowed the expert to testify.

Both experts used a capitalization of excess earnings method for comput-ing the loss of business goodwill. City's expert concluded that the business would suffer no loss of goodwill as a result of the forced move. In contrast, the owners' expert projected a goodwill loss of $139,500.

■ The trial court granted the motion for a new trial based upon an irregularity in the proceeding which prevented the Harrisons from having a fair trial and upon the basis of accident or surprise, which ordinary prudence could not have guarded against. (§ 657, subds. 1 and 3.) The Harrisons also asserted other reasons to support their motion.

In the trial court's specification of reasons for granting a new trial, the court first found an irregularity in the proceeding in that City's expert used an improper method to determine the loss of goodwill. The court thought the failure of City to exchange valuation data of its expert, combined with the esoteric nature of the subject matter, deprived the Harrisons of the op-portunity to meet or expose the improper methodology, thus preventing them from having a fair trial. The use by the expert of figures derived from the business after the valuation date to compute post-take goodwill figures contravened the court's ruling that the loss of goodwill must be "projected" from the date of valuation.

The finding of accident or surprise arising from the same facts supports the trial court's grant of a new trial. Even without recourse to interpreting the special discovery statutes applicable to condemnation cases, the trial

court could rightly find a denial of a fair trial resulted from the unexpected testimony of City's expert.

██ "The discovery statutes are intended to safeguard against surprise." (*West Hills Hospital* v. *Superior Court* (1979) 98 Cal.App.3d 656, 659 [159 Cal.Rptr. 645].) "The rules of discovery contemplate two-way disclosure and do not envision that one party may sit back in idleness and savor the fruits which his adversary has cultivated and harvested in diligence and industry. Mutual exchange of data provides some protection against attempted one-way disclosure; the party seeking discovery must be ready and willing to make an equitable exchange. [Citations.]" (*Swartzman* v. *Superior Court* (1964) 231 Cal.App.2d 195, 204 [41 Cal.Rptr. 721].)

██ In the present case, the Harrisons fully disclosed all relevant information to the City. City knew from the date the answer was filed that the Harrisons were demanding compensation for loss of business goodwill, yet it waited 10 months, until just 1 month before trial of that single issue, to engage an expert on the valuation of business goodwill.

Although at the last moment the Harrisons were given the opportunity to depose the expert, the exercise was futile in light of the fact that the expert had neither reviewed the data, settled upon a method, nor reached an opinion. City's tardiness in engaging an expert eviscerated the safeguards of discovery and resulted in surprise when its expert testified.

City unpersuasively argues that there was no surprise. The Harrisons knew the expert would form an opinion (sooner or later) and testify. If they were displeased with the uncertainty, they could have advised the court, or waited and taken the continuance offered by the court. Alternatively, City seems to argue that because the burden of proof was on the property owners, until the Harrisons went forward and proved a loss of goodwill, City had no duty whatsoever even to employ an expert. Then, if an expert seemed necessary to rebut the owners' expert testimony, City could call for expert help while everyone waited. We disagree.

The special condemnation discovery rules are not accidental. Exceptionally full disclosure is the obvious purpose of the statutes. Ample discovery makes settlement more likely and promotes judicial economy if trial is necessary. "Deposing" an expert in front of a jury is time-consuming and unwise.

In this case City failed to reveal that the expert was using information the court had precluded. To offer the objecting party a continuance immediately prior to trial disregards the right of the party to the trial date; to offer a

break in the middle of the trial after the owner rests is even more unfair. It affords the condemner an undeserved opportunity to stop and formulate a response to the owner's case while the jurors' memories of the previous testimony dim. It was not an abuse of discretion for the trial court to grant a new trial based upon the surprise.

The City claims that since it was ambiguous whether the special eminent domain discovery statutes applied to cases for recovery of goodwill under section 1263.510, the failure to supply the data was in good faith and ought not constitute a ground for new trial. Section 1258.250, in relevant part, states: "A statement of valuation data shall be exchanged for each person the party intends to call as a witness to testify to his opinion as to any of the following matters:

". . . . . . . . . . . . . . . . . . . . . . . .

"(d) The amount of any other compensation required to be paid by Chapter 9 (commencing with Section 1263.010) or Chapter 10 (commencing with Section 1265.010)." Section 1258.260 begins: "(a) The statement of valuation data shall give the name and business or residence address of the witness and shall include a statement whether the witness will testify to an opinion as to any of the matters listed in Section 1258.250 and, as to each such matter upon which he will give an opinion, *what that opinion is* and the following items to the extent that the opinion on such matter is based thereon: . . ." (italics added) and goes on to list factors more relevant to valuing tangible than intangible property and damage.

■ Section 1258.250 states that a statement of valuation data shall be exchanged for each witness who will testify to the amount of compensation required under chapter 9. Chapter 9 contains article 6, the provision relating to compensation for loss of business goodwill.

Section 1258.260 first requires a statement of the expert opinion ("what that opinion is . . .") and then spells out certain factors. which must be covered. Among the factors, those which may apply to goodwill are the interest being valued, the date of valuation, the gross income, deductions and net income, the rate of capitalization and resulting value. If the expert relies on the opinions of other persons, further information is to be furnished.

It is likely that section 1258.260 was written without contemplation of business goodwill valuation problems. If it is not explicit on the subject, as the trial court thought, it should be amended. However ill-fitting the words may be, the intent is clearly to expose fully the expert's opinion on the

subject concerned. The City understood the purpose of the section. Early in the trial the city attorney objected to the direct questioning of the owners' expert on a subject he thought had not been covered in the witness' written statement, saying: "I'm going to object to the questions, calls clearly for an answer that [is] totally beyond the scope of what we've received and exchanged data . . . ." Irrespective of the shortcomings of section 1258.260, counsel knew enough to use it in demanding an exchange of valuation information, and at trial when using failure of disclosure as a reason to exclude evidence. Presumably he knew the exchange was to be mutual.

Section 1258.260 should be liberally construed to provide for a general statement of the expert's proposed testimony, with specifics covering the listed factors *and* any other supporting factors upon which the expert relies. If the factors are not important enough to disclose prior to trial, they are not sufficiently important once trial arrives and may be excluded upon proper objection. If the expert opinion depends upon undisclosed factors, the expert should not testify. We need not dwell on the pre-statute reasoning which supports this point of view. (*Swartzman* v. *Superior Court, supra,* 231 Cal.App.2d 195; *Regents of University of California* v. *Morris* (1968) 266 Cal.App.2d 616, 631-632 [72 Cal.Rptr. 406].)

City claims the trial court erroneously ruled that experts were prohibited from considering or relying upon postvaluation date fiscal data in determining the loss of business goodwill. We will not address this issue. The Supreme Court has a case pending which may clarify the relevance of post-evaluation operational experiences to the proof of loss of business patronage.

■ Much has been said about the trial court's discretion to grant a new trial. In a condemnation case the trial judge occupies a particularly favorable position to review judicial and counsel error occurring during trial, and the effect of such error on the jurors who must hear complex expert testimony which often ranges far and wide. Abuse of judicial discretion must be "manifest and unmistakable" before an appellate court substitutes its view of a fair trial. (*Los Angeles City High School Dist.* v. *Kita* (1959) 169 Cal.App.2d 655, 664 [333 P.2d 60].)

When the motion was argued, the court reviewed City's conduct which had placed the court in the intolerable position of either rejecting City's sole expert, continuing the trial to the Harrisons' prejudice, or admitting the evidence. In respect to the failure to disclose proposed testimony, the court noted: "I remember that I was very reluctant to find that there was a good faith compliance . . . ." Later it added: "It's really an inexcusable situation to place the defendant[s] in."

We have quoted the judge's comments at the time he admitted the evidence, and his reflections after the trial was over. We concur in his conclusions.

We deny the Harrisons' oral request for attorney's fees based upon the frivolity of the appeal. City addressed significant unresolved problems in arguing against the finding of irregularity in the proceedings.

The order granting a new trial is affirmed.

Brown (G. A.), P. J., and Andreen, J., concurred.