[No. F003781. Fifth Dist., May 4, 1987.]

CHARLES S. MOSESIAN, Plaintiff and Respondent, v.
PENNWALT CORPORATION et al., Defendants and Appellants.

852

854

**COUNSEL**

Thomas, Snell, Jamison, Russell & Asperger, James E. LaFollette, David M. Gilmore, Aron, Liggett & Newman and Peggy S. Liggett for Defendants and Appellants.

Paul S. Mosesian and James F. Tritt for Plaintiff and Respondent.

## OPINION

### BALLANTYNE, J.—

#### INTRODUCTION

The instant action arose after Charles Mosesian allegedly suffered crop losses on Madera grapevines in 1979 from application of Kryocide pesticide. Defendant Pennwalt Corporation (hereafter Pennwalt) manufactured and defendant Helena Chemical Company (hereafter Helena) sold the Kryocide.

The six-week jury trial ended with a defense verdict. The trial court then granted the plaintiff's motion for a new trial on the ground that prejudicial hearsay statements from outside experts were brought into evidence through the testimony of Pennwalt's primary expert witness, Dr. Whaley.

The primary issue to be determined on this appeal is whether there was error in permitting Dr. Whaley to testify to the content of hearsay opinions of other experts and, if this was error, whether the error was prejudicial.

#### FACTS

Charles Mosesian has been farming Thompson seedless grapes in Madera County since 1964. In 1979, Mosesian's Libbee and Railroad Ranches, along with most San Joaquin Valley vineyards, were being threatened by the omnivorous leaf roller and the grape leaf folder. These worms can destroy entire crops if left uncontrolled. Pennwalt produces Kryocide pesticide, an effective agent for controlling worms.

Ben Casey, a licensed pest control advisor employed by Helena, found the worm infestation in late May or early June 1979. Pursuant to his advice, Mosesian applied a compound of chemicals that included Kryocide. On July 10, 1979, Casey found a new worm infestation. The vineyards were again sprayed with a slightly different compound pesticide mixture that also included Kryocide.

Four days after pesticide application, Mosesian's foreman observed burning around the fringes of grape leaves, and within 10 more days the burn allegedly became severe enough to cause defoliation and shriveling of berries. Casey suggested that the damage appeared to be a Kryocide chemical burn.

According to Mosesian's foreman, David Loquaci, a representative of Pennwalt examined the Libbee Ranch on August 8, 1979, and stated that the damage appeared to be Kryocide burn. Mosesian filed an action against

Pennwalt and Helena on theories of strict liability, breach of express warranty, and fraud. Prior to submitting this action to the jury, plaintiff moved to amend his pleadings to conform to proof. The jury verdict for the defendants was based on theories of strict liability for failure to warn and an implied warranty of fitness.

The trial, in large measure, was a battle of experts. Pennwalt called Dr. Julian Whaley as one of its primary experts. Dr. Whaley has a master's degree in plant pathology from West Virginia University and a Ph.D. in plant pathology and microbiology from the University of Arizona.

After finishing his Ph.D. in 1964, Dr. Whaley worked for Eli Lilly screening new pesticides as a plant pathologist. He was transferred to Fresno to work as senior plant pathologist at an Eli Lilly field research station. After six years with Eli Lilly, Dr. Whaley was hired as an associate professor of plant pathology at California State University, Fresno. Within five years he was promoted to full professor, a position he retained at trial. Dr. Whaley teaches courses involving pesticides and the effect of pesticides on plant physiology at the undergraduate and graduate levels. He also trains pest control advisors and has helped prepare the plant pathology portion of their licensing examination. Dr. Whaley conducts research involving phytotoxicity, or toxic damage to plants, and he has a private consulting business.

During the course of direct examination by Pennwalt's counsel, Dr. Whaley revealed that he had consulted with several other experts regarding the potential of Kryocide to cause leaf burn and crop loss on the Mosesian ranches. Later, Dr. Whaley revealed the content of what the other experts told him. As Dr. Whaley was asked about Mr. Swanson, the first of the outside experts, Mosesian's counsel objected to the introduction of Swanson's opinion as hearsay.

The trial court asked defense counsel whether the testimony was being used merely to show how Dr. Whaley formed his opinion. Defense counsel replied that Swanson's opinion was not being admitted for the truth of the matter asserted. On that basis, plaintiff's counsel conceded that the substance of what Dr. Whaley learned from the conversation was admissible. Plaintiff's counsel was concerned that Dr. Whaley had been reading from notes of his conversation with Mr. Swanson. His stated ground for objecting to Dr. Whaley's testimony was that his answer on direct examination was not responsive. The trial court overruled this objection contingent upon any future motion to strike.

As direct examination continued, Dr. Whaley stated that Mr. Swanson was formerly a farm advisor with the University of California. Four other

University of California research advisors' opinions were also solicited on direct examination. These were the opinions of Harry Andrus, Pete Christiansen, Dr. George Levitt, and Dr. Fred Jensen. The opinion of Professor Vincent Petrucci of California State University, Fresno, also came into evidence through Dr. Whaley.

In the opinion of all six outside experts, Kryocide could burn leaves very marginally or not at all when applied midseason or when combined with other chemicals. The trial court admonished the jury during the middle of this testimony: ". . . Again, I want to advise the jury all these conversations are not being asked for the truth of the matter. The witnesses are not here or those persons are not here, can't be cross-examined. They are what this witness relied upon in forming an opinion. All right, go ahead." None of the outside expert witnesses testified at trial. The court also gave BAJI instruction No. 2.05. The instruction limited the admissibility of the hearsay in Dr. Whaley's opinion cautioning the jury not to accept as true statements by Dr. Whaley referring to facts stated by others.

Dr. Whaley testified that his opinion was based in part upon these six opinions. He testified that his opinion was also based upon field tests, general experience, inability to see the plaintiff's sulphur records (another potential cause of leaf burn), yield data, Pennwalt field tests, and deposition testimony. When asked on cross-examination whether the outside opinions affected his conclusions, Dr. Whaley replied that he had already reached the same conclusion on his own. Dr. Whaley concluded that Kryocide did not cause any economic burn damage to the plaintiff's crop.

Dr. Whaley's opinion was also based in part upon a comparison of Madera County crop yield values to Mosesian Ranch crop yield values between 1976 and 1982. Except for 1977 and 1981, the crop yield on the Libbee Ranch was consistently just at or above the countywide average. In 1979, the Libbee Ranch crop yield was one-tenth of a ton per acre less than the countywide average. The tonnage yield on the Railroad Ranch was four-tenths of a ton per acre more than the countywide average in 1979. The yield on the Railroad Ranch was consistently less than the countywide average, except for 1976 and 1979 when it was higher.

Dr. Whaley learned that Kryocide was used to stop worm infestations from reading technical journals. He had never investigated a case of chemical burn involving pure Kryocide. He had, however, investigated crop burn cases in which Kryocide was in compound with other chemicals. Dr. Whaley further concluded that there was no evidence of even minor leaf burn after the treatments to the Mosesian vineyards.

Toward the end of Dr. Whaley's testimony, plaintiff's counsel engaged the court in a lengthy objection to the opinions of outside expert witnesses

coming into evidence. If Dr. Whaley had to rely on so many outside experts, plaintiff's counsel questioned the underlying basis of Dr. Whaley's expertise. Counsel's objection, however, was a motion for mistrial not a motion to strike Dr. Whaley's testimony. The trial court denied plaintiff's motion for a mistrial, inviting counsel to voir dire Dr. Whaley further concerning his qualifications. Plaintiff's counsel did object to Dr. Whaley introducing the hearsay opinions of two outside experts, Mr. Burkett and Mr. Price. The trial court sustained the objections and the defendants were unable to admit either hearsay opinion. Plaintiff's counsel failed to object to the introduction of any other hearsay opinions. He failed to make any motion to strike any of Dr. Whaley's hearsay testimony until his motion for new trial.

After the jury verdict was entered for both defendants, the plaintiff filed a timely motion for new trial. The trial court found most of the motion meritless. On the issue of error in the introduction of out-of-court expert opinions coming into evidence through Dr. Whaley, the court found it had erred in allowing the opinions into evidence.

The trial court felt that the center of the entire controversy revolved around the issue of whether Kryocide had the capacity to burn crops. The court reasoned that the entire trial was a battle of experts. It could not say that the jury was not prejudiced by Dr. Whaley's reference to several opinions of unavailable experts. In effect, the opinions of the unavailable experts bolstered and strenghtened Dr. Whaley's opinion which itself centered on the pivotal issue in the case.

DISCUSSION

I.

STANDARD OF REVIEW.

■ Motions for new trial rest so completely within the trial court's discretion that they will not be overturned absent a manifest and unmistakable abuse of discretion. Where a trial court commits an error, even a minor error, reviewing courts defer to the trial court's ruling granting the motion for new trial. This is true even if the error alleged is only debatable and a court would not have reversed the judgment on appellate review. (See *Malkasian v. Irwin* (1964) 61 Cal.2d 738, 747-749 [40 Cal.Rptr. 78, 394 P.2d 822]; *Jiminez v. Sears, Roebuck & Co.* (1971) 4 Cal.3d 379, 387 [93 Cal.Rptr. 769, 482 P.2d 681, 52 A.L.R.3d 92]; *Fresno v. Harrison* (1984) 154 Cal.App.3d 296, 303-304 [201 Cal.Rptr. 219].)

The *Malkasian* was further elaborated in *Richard v. Scott* (1978) 79 Cal.App.3d 57 at page [144 Cal.Rptr. 672]: "Finally, defendants contend

that plaintiff failed to show that the error on which the new trial order was predicated resulted in prejudice. The contention is without merit. Once an error is shown, a reviewing court may not substitute its judgment for that of the trial court on the question of prejudice; the sole issue on appeal is whether the order, in light of the record, constituted a manifest abuse of discretion. [Citations.] The party prevailing below is not required to demonstrate that prejudice resulted from the error for which a new trial was granted."

Defendants argue that plaintiff's counsel waived the right to object to the introduction of hearsay statements by outside experts. At trial, plaintiff's counsel conceded that hearsay statements of outside experts could come into evidence as long as they were not offered for the truth of the matter asserted but were introduced solely for the purpose of showing the basis of Dr. Whaley's opinion. The *Malkasian* court found that even the technical waiver of an error does not prevent the party from moving for and the trial court from granting the motion for new trial. (61 Cal.2d at p. 747.) Because the trial court in *Malkasian* found a "miscarriage of justice," however, this statement is dictum.

However, the rule in *Richard* extends *Malkasian* too far. More recent authorities focus on the necessity for prejudice before a trial court may grant a motion for new trial. Although there must be a showing that the trial court manifestly abused its discretion before overturning the order for new trial, the trial court cannot grant new trials except where the error alleged is somehow prejudicial. Granting a new trial motion where the error is harmless violates article VI, section 13, of the California Constitution which holds that the standard for granting new trial motions is prejudicial error. Cases addressing this issue reason that to hold otherwise would create tremendous waste of judicial time to no avail. (See *Osborne* v. *Cal-Am Financial Corp.* (1978) 80 Cal.App.3d 259, 265-266 [145 Cal.Rptr. 584]; *Garcia* v. *County of Los Angeles* (1986) 177 Cal.App.3d 633, 641 [223 Cal.Rptr. 100]; 8 Witkin, Cal. Procedure (3d ed. 1985) Attack on Judgment in Trial Court, § 136, p. 539.)

The *Malkasian* court noted that the trial court made an express finding that there was a miscarriage of justice. "We have before us an error, minor it is true, but an error nevertheless. In assessing that error we should give considerable weight to the expressed opinion of the trial court that there had been a miscarriage of justice." (61 Cal.2d at p. 749.) This balances the need for judicial economy with the right of all litigants to fair trials which follow fundamental concepts of due process. The *Richard* decision is overbroad in its statement that a litigant need not show that any prejudice resulted from an error. The *Richard* court's statement of the rule indulges the discretion of the trial court beyond the degree contemplated by the *Malkasian* court.

This court, as a matter of principled judicial economy, follows the rule announced in *Osborne* v. *Cal-Am Financial, supra,* and rejects the rule as stated in *Richard.*

We must next determine whether the failure of the trial court to exclude the hearsay opinions was legally permissible, whether it was prejudicial error, or whether it was harmless, unprejudicial error.

II.

HEARSAY OPINIONS OF OUTSIDE EXPERTS.

Evidence Code section 801 permits an expert to form an opinion based on any material whether or not it is admissible, as long as it is "reasonable" for an expert to rely upon. Section 802 permits the expert to state the basis of the opinion. Section 803 empowers the court to exclude any expert's testimony based in whole or in significant part upon improper matters. Under section 804, a party may call anyone upon whom the expert relied in reaching the opinion.

The trial court correctly dismissed the defendants' contentions during the new trial motions that plaintiff should have subpoenaed the six outside experts whose opinions were revealed to the jury through Dr. Whaley. Dr. Whaley was the last Pennwalt witness called toward the end of the six-week trial. It clearly would have been impracticable for the plaintiff to subpoena six witnesses, who were possibly revealed the first time at trial, without causing an inordinate delay of trial and unnecessary inconvenience to the jury.

The general and well-settled rule prevents an expert from predicating an opinion upon the outside opinion of another expert. (*Christiansen* v. *Hollings* (1941) 44 Cal.App.2d 332, 347-348 [112 P.2d 723].) The expert should base the opinion upon facts personally observed or upon a hypothesis supported by the evidence. (*Behr* v. *County of Santa Cruz* (1959) 172 Cal.App.2d 697, 709 [342 P.2d 987].)

The opinions of the six outside experts were unquestionably hearsay opinions. Experts may rely upon hearsay in forming opinions. They may not relate an out-of-court opinion by another expert as independent proof of fact. (*Whitfield* v. *Roth* (1974) 10 Cal.3d 874, 893-896 [112 Cal.Rptr. 540, 519 P.2d 588].) It is proper to solicit the fact that another expert was consulted to show the foundation of the testifying expert's opinion, but not to reveal the content of the hearsay opinion. (*People* v. *Piper* (1980) 103 Cal.App.3d 102, 112 [162 Cal.Rptr. 833].)

The court in *Whitfield* v. *Roth, supra,* was concerned with the potential for a flood of out-of-court opinions pouring through the limited admissibility rule of *Kelley* v. *Bailey* (1961) 189 Cal.App.2d 728 [11 Cal. Rptr. 448]. *Kelley* held that physicians could rely on reports of other physicians not as independent proof of facts but as part of the information the testifying physician used to base his own treatment or diagnosis. The report of the physician not testifying "stands on a parity" with the history of the accident revealed to the treating physician by the patient. Upon request, the jury should be given a limiting instruction that the hearsay is not admitted for the truth of what the patient told the original doctor, but as the basis for each physician's diagnosis. (189 Cal.App.2d at pp. 737-738.)

*People* v. *Piper, supra,* carefully drew a distinction between referring to the fact that an outside witness has been consulted and actually bringing the outside expert's opinion into evidence as hearsay. Neither *Whitfield* nor *Piper,* however, found that the error of introducing hearsay opinions was actually prejudicial to the parties. Neither case was reversed on the ground that hearsay opinions of outside experts were presented to the jury because the error was not harmful in either case.

 The question of what is "reasonable" for an expert to rely upon in forming an opinion under the terms of Evidence Code section 801, subdivision (b), is a foundational issue. It affects the credibility and the authority of the expert's opinion. Sometimes evidence of questionable reliability may be used to form an opinion. In one decision, airline pilot training records were held to be properly used by an expert to aid in his reconstruction of a plane accident. The issue of what is reasonable for an expert to rely upon in forming an opinion and the amount of inadmissible sources used in forming an opinion has been described as a question of the degree of reliance upon the inadmissible material. "The reasonableness of an expert's reliance is a question of degree, and may well vary with the circumstances. Where, as here, there is little or no direct evidence upon which the expert can base an opinion, the expert may have to turn to forms of circumstantial evidence on which he might not otherwise rely. In such circumstances, the necessity for the information dictates that courts accord to experts somewhat greater latitude in sources of information than might otherwise be the case." (*Buckwalter* v. *Airline Training Center* (1982) 134 Cal.App.3d 547, 553-554 [184 Cal.Rptr. 659].)

 The California authorities limit the introduction in testimony of hearsay material used in forming expert opinion to matters that are admissible. (*People* v. *Coleman* (1985) 38 Cal.3d 69, 92 [211 Cal.Rptr. 102, 695 P.2d 189].) Whether it is reasonable for an expert to rely upon the statements of another expert affects the weight of the expert's testimony more than the admissibility of the opinion itself. (*Pfingsten* v. *Westenhaver* (1952)

39 Cal.2d 12, 20 [244 P.2d 395].) The trial court has considerable latitude in qualifying an expert.

At trial and on appeal the plaintiff challenges Dr. Whaley in two ways. First, Dr. Whaley's qualification to form an opinion based upon information from six other experts was challenged on foundational grounds. This is an issue of expert competency. Second, hearsay statements from the other experts were introduced through Dr. Whaley's testimony. At the motion for new trial, the plaintiff contended that this hearsay had a prejudicial effect on the jury.

■ The first issue is not meritorious. Trial courts have considerable latitude in qualifying experts. The record in the instant action clearly reveals that Dr. Whaley was a highly qualified plant pathologist with impressive educational and professional credentials. The trial court itself found that in order to form a proper opinion, Dr. Whaley should have consulted the outside experts.

There is a point, however, at which an expert's opinion that is based entirely upon or substantially upon other opinions would conceivably be worthless. This would occur when, in effect, the expert begins to stray outside his or her subject area of expertise. Experts, however, cannot always be knowledgeable about every single detail of their subject area of expertise. Gaps will necessarily occur concerning highly technical details even among the most qualified experts.

The very fact that someone has qualified as an expert necessarily means that they have the knowledge, training and experience to evaluate new data, new theories, and recent developments in their profession. They have the ability to reason through any gaps in their knowledge. This includes the ability to evaluate whether literature or other experts should be consulted before forming a final opinion. The expert is in the best position to know which others should be consulted within the various subspecialties of the profession. To the extent an expert's opinion hinges upon questionable outside publications or individuals, the expert is subject to vigorous cross-examination. The expert's opinion may be challenged by rebuttal witnesses. Also, the outside witnesses may be subpoenaed to testify themselves. (Evid. Code, § 804, subd. (a).)

Unlike the expert in *Christiansen* v. *Hollings, supra,* Dr. Whaley did not rely solely or even substantially upon the opinions of other experts. (44 Cal.App.2d at p. 347.) His opinion was the same notwithstanding the other opinions. The issue of Dr. Whaley's credentials as an expert pertains to the weight the trier of fact should give to the testimony. It is the trial court's

duty to actually qualify the expert before he renders his opinion to the trier of fact.

The court below was clear that it was not granting the motion for new trial because of plaintiff's challenge to Dr. Whaley's qualification to form an expert opinion. The trial court's single basis for granting the motion was the impact on the jury of the hearsay opinions of the other experts.

Most of the challenged statements were elicited by defense counsel on direct examination. The gist of each hearsay opinion was that no other expert had ever witnessed more than marginal necrosis, or leaf burn, after application of Kryocide or Kryocide compounds. The trial court was concerned that it had no way to measure the effect of the hearsay on the jury, notwithstanding whether the statements were properly admissible as matters reasonably relied upon by experts.

The modern law surrounding the use of hearsay by experts is more liberal in both California and the federal courts than it was in the past. *Whitfield* and *Piper* are merely two examples of authorities which permit experts to rely upon the hearsay statements of other experts. (1 Witkin, Cal. Evidence (3d ed. 1986) The Opinion Rule, §§ 480, 481, pp. 450-452; *United States* v. *1014.16 Acres of Land* (W.D.Mo. 1983) 558 F.Supp. 1238, 1241-1242.)

This court does not find fault with defendants' assertion that an expert may base an opinion upon evidence which is not itself admissible as long as it is the type of evidence upon which an expert may reasonably rely. (*West* v. *Johnson & Johnson Products, Inc.* (1985) 174 Cal.App.3d 831, 861 [220 Cal.Rptr. 437].) The expert may even rely upon scientific tests performed by other experts. (*Williams* v. *Volkswagenwerk Aktiengesellschaft* (1986) 180 Cal.App.3d 1244, 1259-1261 [226 Cal.Rptr. 306].)

The hearsay statements made in consumer complaints were not directly allowed into evidence in the *West* case. The issue there was whether the defendant had notice of consumer complaints concerning defendant's allegedly defective product in time to cure the defect. The trial court refused to allow introduction of the actual consumer complaint letters. It did permit the expert to form an opinion based on complaints and to testify to the content of particular complaints in forming an opinion. This procedure was upheld on appeal. (174 Cal.App.3d at p. 861.)

Defendants urge this court to adopt the *West* rationale and to find that Dr. Whaley could testify to the content of the hearsay statements of the other experts as long as they are proper matters upon which experts rely.

Although we agree with the rationale of the *West* decision, we find the hearsay evidence introduced there distinguishable from the hearsay opinions introduced here. The hearsay evidence in *West* was not introduced for the truth of the matter asserted there. The issue in *West* centered upon notice to the manufacturer of a defect in its product. (174 Cal.App.3d at p. 859.) The expert's testimony concerned that issue, not whether the information in the complaints was actually true. The out-of-court statements contained in the complaints were not admitted to prove the truth of the statements, but to show that the statements had been made. (174 Cal.App.3d at p. 861.)

The expert in *Williams* relied upon a scientific stress test performed by a second expert in forming his opinion. The court in *Williams* first determined that the expert was relying on the scientific calculations of an outside expert, not on the outside expert's subjective opinion. The trial court directed the plaintiff to produce the outside expert for voir dire outside the jury's presence to establish the foundational facts supporting the test calculations. The *Williams* court held that the testifying expert's opinion, based upon the outside expert's work, was properly admitted into evidence. (180 Cal.App.3d at pp. 1260-1261.)

The hearsay statements of the outside experts elicted by defendants on direct examination of Dr. Whaley are very different from the hearsay evidence introduced in *West* and in *Williams*. Unlike *West,* the hearsay opinions of the unavailable experts were introduced by these defendants for the truth of the matter asserted. The hearsay statements in *Williams* were calculations. The foundational facts underlying the calculations were proven at trial. There was no solicitation in *Williams* of the subjective opinions of the outside expert. Here, in sharp contrast, the subjective hearsay opinions of outside and unavailable experts were brought into evidence upon direct examination of Dr. Whaley. Neither of these cases support the defendants' contention that the hearsay opinions of the unavailable experts were admissible under the facts of this case.

■ Procedurally, if an expert does rely in part upon the opinions of others, the expert may be cross-examined as to the content of those opinions. It is improper, however, to solicit the information on direct examination if the statements are inadmissible. (*People* v. *Coleman, supra,* 38 Cal.3d 69, 92; *Grimshaw* v. *Ford Motor Co.* (1981) 119 Cal.App.3d 757, 788-789 [174 Cal.Rptr. 348].) The defendants in this action improperly solicited hearsay statements from Dr. Whaley on direct examination.

The statements of the six other witnesses are inadmissible hearsay statements. Whether *or not it was* counsel's or Dr. Whaley's intent to do so, introduction of the statements had the effect of fortifying his own opinion. Ironically, none of the statements were necessary for Dr. Whaley to form

an opinion because he used them merely to confirm an opinion he had already reached. The outside expert opinions were not admissible for the truth of the matter asserted. ˙

■ However, inadmissible hearsay can become competent evidence where the party opposing its introduction fails to raise a proper objection. (3 Witkin, Cal. Evidence (3d ed. 1986) §§ 2033 and 2034, pp. 1994-1996.) ■ Under Evidence Code section 353, objections to evidence must be made in both a timely manner and upon the proper ground or grounds.

Failure to make a timely objection or motion to strike inadmissible evidence constitutes a waiver of the right to later complain of its erroneous admission into evidence. (*Rodriguez* v. *McDonnell Douglas Corp.* (1978) 87 Cal.App.3d 626, 659-660 [151 Cal.Rptr. 399].) Parties also waive the right to later contest the admissibility of evidence where counsel fails to state the specific, correct ground or grounds supporting the objection. (*People* v. *Castaneda* (1975) 52 Cal.App.3d 334, 339 [125 Cal.Rptr. 9].) ■ Where there is no motion to strike an expert's answers to questions, a reviewing court cannot reach the claim of error. (*People* v. *Worthy* (1980) 109 Cal.App.3d 514, 527 [167 Cal.Rptr. 402].)

■ The plaintiff failed to properly and timely object to most of the hearsay statements in Dr. Whaley's testimony. Plaintiff's counsel initially conceded the admissibility of the substance of the outside experts' opinions. He focused not upon hearsay, but upon the unresponsiveness of Dr. Whaley's answer as he read from his notes. Counsel later attacked Dr. Whaley's testimony on the foundational ground of his qualification as an expert. The two times plaintiff's counsel actually made hearsay objections, they were sustained and the out-of-court opinions did not come into evidence.

Plaintiff's counsel chose the incorrect grounds for attacking Dr. Whaley's hearsay statements. He also waited too long to attack the introduction of the statements into evidence. ■ During trial, counsel waited until after Dr. Whaley finished his testimony to move for a mistrial.

A motion for mistrial was procedurally incorrect. Under these facts, plaintiff should have made a motion to strike Dr. Whaley's hearsay statements. (*Pineda* v. *Los Angeles Turf Club, Inc.* (1980) 112 Cal.App.3d 53, 62 [169 Cal.Rptr. 66].) ■ Plaintiff waited until the motion for new trial to challenge the hearsay statements in Dr. Whaley's testimony. The delay in stating the correct ground for striking Dr. Whaley's testimony constituted a waiver of any objection to the hearsay present in Dr. Whaley's testimony. Because of the plaintiff's waiver, there was no error at all. Absent some error, the motion for new trial cannot be granted under *Malkasian.*

 Assuming arguendo that the introduction of hearsay was erroneous, the error is not prejudicial. Plaintiff would have this court use the *Malkasian* doctrine to uphold the trial court's order granting the motion for new trial the moment we find any error below. Mere error is not, however, enough to sustain a trial court's granting of a new trial motion. There has to be some finding by the trial court of prejudice or injustice to the party asserting the error. In *Malkasian,* the trial court found a "miscarriage of justice." ·(61 Cal.App.2d at pp. 747-749.) Error need not be substantial under the *Malkasian* doctrine, but it must somehow work an injustice. Harmless error does not justify the granting of a motion for new trial. (*Osborne* v. *Cal-Am Financial Corp., supra,* 80 Cal.App.3d at pp. 265-266; *Garcia* v. *County of Los Angeles, supra,* 177 Cal.App.3d at p. 641.)

 The fundamental issue that stood as the cornerstone of the entire trial was whether the plaintiff suffered a crop loss. The introduction of the hearsay opinions through Dr. Whaley touched upon only one aspect of economic crop loss. Can Kryocide ever cause leaf·burn and does leaf burn lead to a loss of production? If the leaf burn complained of by the plaintiff could only be marginal, then the probability of economic loss was remote.

Dr. Whaley's opinion and his testimony centered around other overriding facts. First, there was the experimental recreation of the accident on the Pennwalt test farm. Second, there was testimony concerning the potential of improper sulphur application as a cause of any damage. Third, and most importantly, there was crop yield data comparing production of plaintiff's crops over a period of time to countywide averages.

The plaintiff's actual crop yields, with some exceptions, closely followed the countywide averages. The figures for 1979 show only a marginal drop of one-tenth of a ton from the countywide average yield for the Libbee Ranch, but an actual increase of four-tenths of a ton per acre above the county average yield on the Railroad Ranch. The plaintiff testified that the Libbee Ranch had 240 acres in production and that the Railroad Ranch had 160 acres in production in 1979. Multiplying the tonnage yield above the countywide average of four-tenths of a ton per acre by the 160 acres on the Railroad Ranch, the Railroad Ranch produced 64 tons more Thompson seedless grapes than a farm of like size in Madera County in 1979. Multiplying the 240 acres on the Libbee Ranch by the one-tenth ton per acre less than the countywide average, the Libbee Ranch produced 24 tons less than the average Madera County ranch of similar size. The plaintiff still had a net gain of 40 tons of Thompson seedless grapes over and above the countywide average production.

To the extent that Dr. Whaley's opinion was fortified by inadmissible hearsay, his testimony carried a disproportional weight than it should have.

The great weight of the evidence, however, supports the jury's verdict. The erroneous introduction of hearsay statements into evidence through the testimony of an expert can be overcome by the weight of the testimony. (*People v. Coleman, supra,* 38 Cal.3d 69, 92; *Grimshaw v. Ford Motor Co., supra,* 119 Cal.App.3d 757, 788-789.) In addition to the weight of the evidence presented, it must also be noted that the trial court admonished the jury during Dr. Whaley's testimony and again during jury instructions not to accept the hearsay opinions of the outside witnesses for the truth of the matter asserted.

The overriding defect here, however, was the plaintiff's waiver of the introduction of hearsay opinions due to his multiple failures to object to Dr. Whaley's testimony on the proper ground and in a timely manner. The trial court cannot commit a legal error unless it first rules incorrectly upon a party's objection. The trial court here never had the opportunity to rule upon plaintiff's objection because none was made. The order granting the motion for a new trial is erroneous because the asserted error is not error at all in that the trial court never had the opportunity to err due to the plaintiff's failure to object to Dr. Whaley's testimony as required under Evidence Code section 353. Following the constitutional standard set forth in *Osborne v. Cal-Am Financial Corp., supra,* 80 Cal.App.3d at pages 265-266, there is no error in the instant action and no corresponding prejudice.

It was improper for the defendants to elicit hearsay opinions on direct examination. Even assuming this was error, however, the error was harmless in light of the substantial evidence supporting the judgment for the defendants and the admonishments given to the jury by the trial court. There is a substantial amount of evidence supporting Dr. Whaley's conclusions that is unrelated to the hearsay opinions of the other outside experts. Without their opinions, Dr. Whaley's opinion would have remained the same. Where the expert's opinion would have remained the same notwithstanding reliance upon material that is inadmissible, any error is harmless. (*Pineda v. Los Angeles Turf Club, Inc., supra,* 112 Cal.App.3d 53, 62.)

The trial court's order granting plaintiff's motion for a new trial is reversed. The case is remanded with directions that the court enter the jury's verdict for the defendants. Each side shall bear its own costs on appeal.

Woolpert, Acting P. J., and Best, J., concurred.

A petition for a rehearing was denied May 27, 1987, and respondent's petition for review by the Supreme Court was denied July 22, 1987.