Filed 1/26/16  P. v. Deshazo CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>MICHAEL WILLIAM DESHAZO,<br><br>    Defendant and Appellant. | D069080<br><br><br><br>(Super. Ct. No. RIC520868) |

APPEAL from an order of the Superior Court of Riverside County, Michael B. Donner, Judge.  Affirmed.

Stephen M. Hinkle, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Peter Quon, Jr., and Lise S. Jacobson, Deputy Attorneys General, for Plaintiff and Respondent.

Michael William Deshazo appeals an order committing him to the Department of State Hospitals for an indeterminate term for treatment as a sexually violent predator (SVP) under the Sexually Violent Predator Act (Welf. & Inst. Code, § 6600 et seq. (the Act); all

statutory references are to the Welf. & Inst. Code). Deshazo contends the trial court prejudicially erred in precluding defense counsel from cross-examining the People's expert about another expert's opinion. He also asserts his indeterminate commitment under the Act violates equal protection. We reject his contentions and affirm the order.

FACTUAL AND PROCEDURAL BACKGROUND

Forensic psychologist Dale Arnold evaluated Deshazo in February 2014. Dr. Arnold testified that the first criterion for an SVP finding is the conviction for a sexually violent offense. He concluded that Deshazo's 1988 conviction for forcible lewd act on a child satisfied this criterion because the crime involved the use of force and because the victim was under the age of 14.

The second criterion is whether the inmate suffers from a mental disorder that predisposes the inmate to committing criminal sexual acts. Dr. Arnold diagnosed Deshazo as having a pedophilic disorder. That disorder is defined as a period of six or more months where the person has recurrent fantasies, urges or behaviors involving sexual contact with a prepubescent child, listed as somebody who is generally age 13 or younger. The person must be at least age 16 and more than five years older than the child. The person must also act upon that urge or fantasy of having sexual contact with children.

Dr. Arnold testified that in 1982, when Deshazo was 16 years old, he pulled down the pants of a seven-year-old boy who was spending the night at his family's home and tried to sodomize the boy. In 1988, Deshazo pleaded guilty to the misdemeanor molesting of a seven-year-old girl. That same year, Deshazo molested 10-year-old

2

Stephanie. While Deshazo dated Stephanie's mother he molested Stephanie over a period of about three months. Dr. Arnold testified that Deshazo's molestation of Stephanie within weeks of his misdemeanor child molestation conviction showed the "high intensity" of Deshazo's sexual urge to contact children.

In 1992, after being on parole for a few months for his conviction for the forcible lewd act upon Stephanie, Deshazo violated parole by cohabitating with a woman who had a nine-year-old daughter. After being paroled again in 1994, Deshazo twice violated the terms of his parole within a few months by again having contact with minors. In one instance, he was found in bed with a young boy who was crying. In 1995 he was paroled and violated parole a few months later by failing to provide his address to his parole officer. When the authorities found Deshazo, he possessed illegal drugs and received a three-year prison sentence.

When paroled in 1998, he violated the terms of his parole within a few months by possessing a box of toys that authorities found at the home of a woman whom Deshazo had been dating. The woman had a prepubescent child. When paroled in 2000, Deshazo started dating a woman with children under the age of 10. He was returned to custody for this violation and paroled again in 2001. He violated parole within a few months by having contact with his own under-aged son at a gas station and by possessing toys or games at his residence. Deshazo returned to custody and was released in October 2002.

In December 2002, Deshazo provided alcohol to his 15-year-old daughter and her 19-year-old friend. While watching a movie he unzipped his daughter's sweatshirt and grabbed her breasts. When his daughter went to the restroom and returned, Deshazo was

3

having sex with the 19-year-old friend. Deshazo was arrested for a sex crime upon his daughter.

The third criteria is whether Deshazo is likely to reoffend if released to the community. Because one of the most predictive factors of recidivism is sexual deviance, Dr. Arnold explained it is important for sexual deviants to admit their deviance so that they can be aware of and learn to manage the risks. Accordingly, Dr. Arnold discussed Deshazo's prior sex offenses with him and compared Deshazo's current explanation with prior statements. Dr. Arnold opined that, without continued in-custody treatment, Deshazo was likely to commit a sexually violent predatory criminal act because of his diagnosed mental disorder.

A jury found Deshazo to be an SVP with a diagnosed mental disorder who was a danger to others and likely to engage in sexually violent predatory criminal behavior. The trial court ordered Deshazo committed for an indeterminate term. Deshazo timely appealed.

DISCUSSION

I. *General Legal Principles*

The Act provides for indefinite involuntary civil commitment of persons who meet specified criteria following the completion of their prison terms. (*People v. McKee* (2010) 47 Cal.4th 1172, 1186-1187 (*McKee I*).) Section 6600, subdivision (a)(1), defines a sexually violent predator as "a person who has been convicted of a sexually violent offense against one or more victims and who has a diagnosed mental disorder that makes the person a danger to the health and safety of others in that it is likely that he or she will

4

engage in sexually violent criminal behavior."  To establish a person is an SVP, the government must prove the following: (1) the offender has been convicted of a qualifying sexually violent offense against at least two victims; (2) the offender has a diagnosed mental disorder; (3) the disorder makes it likely the offender would engage in sexually violent conduct if released; and (4) this sexually violent conduct will be predatory in nature.  (*Cooley v. Superior Court* (2002) 29 Cal.4th 228, 246 & fn. 9.)  The government must establish these elements beyond a reasonable doubt and the jury must unanimously agree before finding the defendant is an SVP.  (*Reilly v. Superior Court* (2013) 57 Cal.4th 641, 648.)

## II.  *Cross-Examination of Expert Witness*

A.  Background Facts

Dr. Arnold opined that Deshazo suffered from pedophilic disorder.  During cross-examination, defense counsel established that Dr. Arnold had seen that a 2004 mentally disordered offender (MDO) evaluation by Dr. Terrini (2004 MDO evaluation) pertaining to Deshazo had been referenced in Dr. Updegrove's report.  Although Dr. Arnold reviewed Dr. Updegrove's report, he had not seen the actual 2004 MDO evaluation.  Defense counsel then established that he asked Dr. Arnold to look at the 2004 MDO evaluation that morning and Dr. Arnold had done so.

Dr. Arnold testified that one of the criteria Dr. Terrini considered in the 2004 MDO evaluation was whether Deshazo had a severe mental disorder in December 2004.  Defense counsel asked Dr. Arnold, "And [Dr. Terrini] found he did not?"  After the court overruled the prosecutor's relevance and hearsay objections, Dr. Arnold responded that Dr. Terrini

5

made that finding based on an inadequate database. Dr. Arnold explained that Dr. Terrini did not have information about Deshazo's 1982 juvenile adjudication or his 1988 misdemeanor child abuse conviction. Dr. Arnold acknowledged Dr. Terrini had information about Deshazo's 1988 forcible lewd act, the 2002 crime involving Deshazo's daughter and the parole violations, including the five contacts with children.

Defense counsel asked Dr. Arnold whether Dr. Terrini opined that Deshazo was not a pedophile as of December of 2004. The prosecutor objected based on relevance, and the court considered the objection outside the jury's presence. Defense counsel argued he could cross-examine Dr. Arnold on Dr. Terrini's 2004 MDO evaluation because Dr. Arnold relied on Dr. Updegrove's report, which incorporated Dr. Terrini's report. Defense counsel clarified that he wanted to elicit from Dr. Arnold that Dr. Terrini had found Deshazo was not a pedophile. The court explained that the defense was offering Dr. Terrini's opinion for the truth of the matter asserted and that Dr. Terrini's opinion was inadmissible. The court ultimately instructed the jury to disregard Dr. Arnold's testimony reporting that Dr. Terrini found that Deshazo did not meet the criteria in December 2004 of a severe mental disorder and was not a pedophile.

B.  Analysis

" 'Hearsay evidence' is evidence of a statement that was made other than by a witness while testifying at the hearing and that is offered to prove the truth of the matter stated. [¶] . . . Except as provided by law, hearsay evidence is inadmissible." (Evid. Code, § 1200, subds. (a), (b).) On direct examination, experts may testify regarding the matters on which they relied in forming their opinion, but they may not testify as to the details of such matters

6

if they are otherwise inadmissible.  (*People v. Coleman* (1985) 38 Cal.3d 69, 92 (*Coleman*).)

"The rule rests on the rationale that while an expert may give reasons on direct examination for his opinions, including the matters he considered in forming them, he may not under the guise of reasons bring before the jury incompetent hearsay evidence."  (*Ibid.*)

During cross-examination, however, parties have wide latitude to test the expert's credibility.  (*Coleman*, *supra*, 38 Cal.3d at p. 92.)  Additionally, expert witnesses may be questioned during cross-examination regarding the basis of their opinion.  (Evid. Code, § 721, subd. (a).)  Thus, if an expert relied in part upon the opinions of others, the expert may be cross-examined as to the content of those opinions.  (*Mosesian v. Pennwalt Corp.* (1987) 191 Cal.App.3d 851, 864.)  A trial court's ruling regarding the admissibility of hearsay is reviewed for abuse of discretion.  (*People v. Valdez* (1997) 58 Cal.App.4th 494, 511.)

Deshazo contends the trial court erred in precluding defense counsel from cross-examining Dr. Arnold about the contents of the 2004 MDO evaluation done by Dr. Terrini because Dr. Arnold relied on Dr. Terrini's 2004 MDO evaluation in forming his opinion.  We disagree because Dr. Arnold did not rely on Dr. Terrini's 2004 MDO evaluation in forming his opinion.

Dr. Arnold testified that he knew of Dr. Terrini's 2004 MDO evaluation because Dr. Updegrove referenced it in his report, but he had not seen the actual 2004 MDO evaluation.  Thus, Dr. Arnold could not have relied on Dr. Terrini's 2004 MDO evaluation in forming his opinion.  Dr. Arnold did not look at the 2004 MDO evaluation until defense counsel asked him to do so on the morning of Dr. Arnold's testimony.  Accordingly, the trial court did not err in striking Dr. Arnold's testimony that Dr. Terrini had concluded in

7

December 2004 that Deshazo was not a pedophile. The trial court properly limited Dr. Arnold's cross-examination to the facts ascertained by Dr. Terrini.

III. <em>Constitutional Right to Equal Protection</em>

The trial court ordered Deshazo committed for an indeterminate term under sections 6600-6604. Deshazo contends his commitment violates the state and federal Equal Protection clause as he has a more difficult burden to regain freedom than similarly situated persons committed under other civil commitment schemes and no sufficient justification has been presented for the disparate treatment. He urges that we not follow the decision in *People v. McKee* (2012) 207 Cal.App.4th 1325 (*McKee II*) finding that the Act does not violate a committed person's constitutional right to equal protection. Deshazo acknowledges that several appellate court decisions issued subsequent to *McKee II* have rejected his equal protection argument. (*People v. McDonald* (2013) 214 Cal.App.4th 1367, 1377-1382 (*McDonald*), *People v. Landau* (2013) 214 Cal.App.4th 1, 45-48 (*Landau*), *People v. McCloud* (2013) 213 Cal.App.4th 1076, 1085-1086 (*McCloud*); *People v. McKnight* (2012) 212 Cal.App.4th 860, 862-864 (*McKnight*).) Nonetheless, he makes the argument to preserve his equal protection claim for federal review.

We agree with the reasoning in *McKee II* and with our colleagues in *McDonald*, *Landau*, *McCloud* and *McKnight* that *McKee II* is correct. We also note that the Supreme Court's denial of review in *McKee II* supports our conclusion to follow the *McKee II* holding. (*Di Genova v. State Board of Education* (1962) 57 Cal.2d 167, 178 [denial of a petition for review is not "without significance"].)

DISPOSITION

The order of commitment is affirmed.

McINTYRE, J.

WE CONCUR:

NARES, Acting P. J.

AARON, J.