[Civ. No. 11631.   Third Dist.   July 9, 1968.]

BOARD OF TRUSTEES OF THE PLACERVILLE UNION SCHOOL DISTRICT, Plaintiff and Respondent, v. LILLIAN PORINI, Defendant and Appellant.

Karlton & Blease and Lawrence K. Karlton for Defendant and Appellant.

Daryl J. McKinstry, County Counsel, for Plaintiff and Respondent.

PIERCE, P. J.—On August 31, 1965, plaintiff-respondent Board of Trustees of the Placerville Union School District (School District Board) suspended defendant-appellant Lillian Porini on charges that she was incompetent due to a mental disability. Mrs. Porini was then a teacher with many years' tenure. The suspension was preceded (in sequence) by charges (under § 13408[1]), by a notice (under § 13410), by psychiatric examinations by Dr. John A. Stroud, a psychiatrist employed by the School District Board for that purpose (under § 13411), and by Dr. Stroud's report finding that Mrs. Porini was *then* in a mental condition unfitting her to instruct children. (See § 13403, subd. (f).) The last of Dr. Stroud's examinations was held on August 19, 1965. That was the last date he ever saw Mrs. Porini professionally.

The School District Board then suspended Mrs. Porini (under § 13408) and took statutory steps to dismiss her. Those steps included the filing of a complaint in the superior court setting forth the charges and asking "that the court inquire into such charges and determine whether or not the charges are true . . . [also] whether or not they constitute

---

[1]All section references are to the Education Code unless otherwise noted.

sufficient grounds for the dismissal of defendant, and for judgment pursuant to its findings.'' (§ 13412.)

Section 13435 provides in part that ''After the trial . . . the court shall make and enter its judgment . . . and shall determine whether or not the governing board may *dismiss* the employee.'' (Italics ours.) In *Midway School Dist.* v. *Griffeath* (1946) 29 Cal.2d 13 [172 P.2d 857], a minority of our Supreme Court (the dissenting opinion by Justice Spence, concurred in by Chief Justice Gibson and Justice Edmonds) would have held that under this section the trial court had the power to determine whether, under the facts and law, the board *may* dismiss an employee, but it did not have the function to determine whether the board *should* dismiss an employee. In other words, the court could determine whether at the time the board took action it had grounds under the law justifying some penalty, but the function of fixing the penalty was an administrative function which remained with the board. But the majority of the court held otherwise. It held (at p. 17 of 29 Cal.2d) that the trial court had the duty of determining both the truth of the charges and their sufficiency to support a dismissal. As to the function of a reviewing court it held (on p. 17) : ''On an appeal from the judgment the review is not to discover whether facts exist which sustain the action of the board, but whether the evidence on the court hearing supports the findings and judgment of the court.''

The *Midway School District* case did not involve mental disability. It involved charges of unprofessional conduct, dishonesty and persistent violation of school law and regulations. Where the charges are ''incompetency due to physical or mental disability,'' another section adds a legislative mandate that the court consider both the truth of the charges and the extent of the disability. (§ 13437.) It provides (in such cases) : '' [I]n lieu of dismissal the judgment may require the employee to take a leave of absence for only such period as may be necessary for rehabilitation from the incompetency. The leave of absence shall not exceed two years. During the leave of absence, the employee shall be entitled to the benefits authorized by this code to employees of school districts absent from their duties on account of sickness.''

It is upon the last quoted provision that decision in this case must rest because the trial court *did* determine that a leave of absence in lieu of dismissal was the proper action. The judgment is dated December 29, 1966. It decrees, *inter*

*alia,* that defendant "is suffering from a mental disability of such character as to render her incompetent to perform her duties"; also that she "is not entitled to reinstatement unless and until it can be shown within two (2) years from the entry of this judgment, to the satisfaction of this Court, that rehabilitation of said Defendant has occurred." Mrs. Porini, the judgment stated, "during the leave of absence, shall be entitled to the benefits authorized by the Education Code to employees of school districts absent from their duties on account of sickness."

██ The judgment as given cannot be supported by the record. As we have shown, the trial court judgment decides not only whether the governing board had grounds for action; it must also determine what that action should be. The judgment therefore speaks as of its date, December 29, 1966, or at least as of the date of the trial which was held between September 12th and 15th, 1966. There is no evidence in the record to support a judgment that Mrs. Porini suffered *any* mental incapacity as of those times, or at any time approaching them. There is some evidence (produced by defendant) to the contrary. ██ The judgment cannot be supported for a second reason which correlates with the first. It places upon Mrs. Porini, the teacher, the burden of establishing her mental soundness at the end of the two-year leave of absence. The statute does not contemplate that. (See § 13462.)

THE RECORD

Mrs. Porini graduated from San Jose State College in 1938, receiving a bachelor of arts degree. She did graduate work at Sacramento State College. She holds a general elementary teaching credential and a general administrative credential. She is a member of the California and Placerville teachers associations and of several educational honor societies. She has been married for 25 years and is the mother of two children. She has been an elementary school teacher in the Placerville area since 1939. Within three years of the action involved herein she was elected to the administrative council of her teacher's association and during part of that period held the post as its secretary.

In 1965 friction developed between Mrs. Porini and the principal of the school at which she was a fifth grade teacher. Before 1965 their relations had been normal. The trouble in 1965 culminated in the action outlined above, ultimately involving the school superintendent and the entire school

board. Detailed explication at this point will not aid this decision. (Some of the causes will be explained further below.) Substantial evidence in the record supports the position of the School District Board that Mrs. Porini suffered a debilitating mental illness, one which rendered her unfit to teach children—*as of August 31, 1965*. That was when the charges were filed against Mrs. Porini.

But respondent at a trial which occurred more than one year thereafter,[2] produced not one bit of evidence, expert or otherwise, that any mental disability whatever had lasted one day beyond August 31, 1965. For example, on direct examination, Dr. Stroud, the psychiatrist who had been appointed by the School District Board to examine Mrs. Porini, and who was a witness for the board, was not asked a single question calling for his opinion as to her condition after that date. And Dr. Stroud conceded on cross-examination he could not express an opinion whether at the time of the trial Mrs. Porini was or was not mentally able to return to work. Defendant, on the other hand, produced psychiatric testimony that, at the time of the trial, she *was* capable of returning to her teaching duties. She had employed a psychiatrist, Dr. Young, who had been recommended to her by her family physician. Dr. Young had first examined her on September 8, 1965. He had immediately referred her to a clinical psychologist who had examined her and had reported to the doctor. Based upon that report and his own examinations, Dr. Young, too, had found Mrs. Porini mentally ill. Expressed in terms which, perhaps, connote a somewhat less serious mental illness than that stated by Dr. Stroud, Dr. Young's diagnosis would nevertheless justify a finding that as of September 1965 Mrs. Porini's mental condition made her unfit to teach. Dr. Young at his initial interviews with Mrs. Porini noted her unwillingness to admit a mental problem. As these interviews progressed, however, her attitude changed. She evinced a willingness to recognize the existence of her problem and the fact that she should not continue to teach while her condition was such that it might redound to the detriment of her pupils. Her attitude became cooperative.

[2] We do not know why the trial was delayed so long. Section 13416 provides: ''When the employee has filed his answer to the complaint, either party may, upon five days' notice to the other, move the court to set the matter for trial. The proceeding shall be set for trial at the earliest possible date and shall take precedence over all other cases, except older matters of the same character and matters to which special precedence is given by law.''

The psychiatrist considered that change of attitude a favorable indication. He recommended a course of psychiatric treatments. His patient agreed and over a course of several months Dr. Young spent 14½ hours with Mrs. Porini. She continued to be cooperative, and she continued to improve. The doctor decided the treatments should be discontinued at least temporarily. He had reached the conclusion that it would be better for her to return to work and that she could safely do so. He stated that should stresses arise in the future these could be satisfactorily controlled by further consultations. The doctor gave as his unequivocal opinion, expressed in terms of "reasonable medical certainty," that as of the time of trial Mrs. Porini was "mentally competent to return to teach." In addition, he stated, "I think she has gained some improvement that would help her be better than before." These opinions, unlike Dr. Stroud's, were based upon comparatively current observations.

The trial court, of course, did not have to be impressed by Dr. Young's opinion. This reviewing court cannot, and does not propose to, superimpose any reweighing of the evidence on the weighting given by the trial judge who saw and observed the witnesses. His findings were properly conclusive. (*Guardianship of McConnell* (1938) 26 Cal.App.2d 102, 106 [78 P.2d 1043].) The point is that here, if one takes away Dr. Young's testimony, there is a void. Respondent had the burden of proof. It did not sustain that burden. The statute we interpret here must be strictly construed. It has as a possible object the termination of employment of a permanent teacher. Her right of continued employment is a valuable right. (*Fresno City High School Dist.* v. *De Caristo* (1939) 33 Cal.App.2d 666, 672 [92 P.2d 668], hear. den.) It is our interpretation of the sections of the statutory plan of the Education Code which we review that the Legislature has intended that a tenured teacher shall not suffer permanent termination of her employment unless and until it has been proven by the school board that her disability is in fact permanent or, as an alternate cutoff period, that it has lasted for a total of two years. That rule, as we read the law, is inherent in that portion of section 13412 quoted above which makes it the court's duty to determine not only whether the charge (of "incompetency due to mental disability" under section 13408) is true, but whether it is of sufficient severity to justify dismissal. Section 13437 recognizes that a permanent severance may be too drastic. It calls for a leave of absence with sickness benefits as a substi-

tute with a maximum leave fixed at two years. ▮ And the following wording of section 13462, ''At the expiration of the leave of absence of the employee, he shall, unless he otherwise agrees, be reinstated in the position held by him at the time of the granting of the leave of absence,'' permits no other interpretation than that affirmative proof by the school board of the teacher's continued mental disability would be the only alternative to such reinstatement. Here the trial court's judgment switched the burden which the statute had imposed upon the school board. ▮ Its second error was that the court, having a duty to make a judgment under section 13412 as of the time of trial (else how could it determine whether dismissal or a leave of absence was proper?), attempted to make that judgment on evidence of a condition existing a year earlier. Thus, the record shows an insufficiency of evidence as a matter of law.

The case must be reversed. It must be remanded for retrial. One issue before the trial court had been whether Mrs. Porini had been properly suspended for mental disability on August 31, 1965. The court properly so found. The findings relative to her mental condition thereafter, however, cannot be sustained on the present record. All rights of Mrs. Porini after August 31, 1965, under section 13412 et seq., which were and are at issue in this proceeding (unless these proceedings are to be abandoned by the School District Board), must be determined upon a retrial.

Other contentions herein must be determined.

### Sufficiency of the Notice

▮ Section 13405 contains a provision: ''The notice shall not be given between May 15th and September 15th of any year.'' Appellant contends that provision refers to the notice given here. We disallow that contention. Although the sections have been clumsily drafted, the notice contemplated by section 13405 is not the notice to be given after an order of immediate suspension. Section 13405 is one of three sections *in pari materia*. Section 13403 lists eleven causes for the dismissal of a permanent school employee, and section 13404 provides for the giving of a notice to the employee if the governing board of a school district deems dismissal is necessary. Among the causes for dismissal specified by section 13403 are incompetency (subd. (d)) and ''Physical or mental condition unfitting . . . [the employee] to instruct or associate with children'' (subd. (f)). As stated, appellant argues that those

sections in sequence add up to a prohibition against serving a notice between May 15th and September 15th. The notice in the case before us was served in August.

We interpret the provisions of section 13405 to apply to proceedings which are unequivocally for dismissal, not preceded by immediate suspension. Here an immediate suspension was ordered. The board is permissively empowered to order such a suspension under section 13408 when certain conditions exist. One of such conditions is "incompetency due to mental disability." The suspension is required to be immediately followed by a "notice to . . . [the employee] of his suspension, and that 30 days after service of the notice, he will be dismissed, unless he demands a hearing." The contents and manner of giving that notice are set forth in section 13410.[3] That is not the notice to which section 13405 relates and as to which a four months' moratorium is granted. So to hold would accuse the Legislature of having intended an irrational absurdity. E.g., proceedings against a homicidal maniac could not be instituted between May 15th and September 15th. From the teacher's standpoint, on the other hand, it would mean that after an immediate suspension on May 14th the proceedings would stand still for four months. During that period the teacher would remain in a suspended status. Section 13405 is inapplicable here.

### MENTAL ILLNESS TO JUSTIFY SUSPENSION NEED NOT BE PERMANENT

■ Appellant contends that she cannot be relieved of her duties even temporarily for a temporary mental incompetency. however total. Her brief states: "[T]he complaint in order to state a cause of action must charge a permanent condition— i.e., the mental condition charged must be a permanent mental condition." To state the contention is to answer it. Sections 13412, 13437 and 13462, which we have discussed above expressly contemplate an incompetency which is less than permanent and provide for "a leave of absence for only such period as may be necessary for rehabilitation from the incom-

---

[3]Section 13410 reads as follows: "The notice of suspension and intention to dismiss, shall be in writing and be served upon the employee personally or by United States registered mail addressed to the employee at his last known address. A copy of the charges filed, together with a copy of Sections 13313, 13327 and 13338, and Sections 13403 to 13441, inclusive, shall be attached to the notice. If the employee does not demand a hearing within the 30-day period, he may be dismissed upon the expiration of 30 days after service of the notice."

petency.'' (§ 13437.) Appellant lifts a sentence from context in *Fresno City High School Dist.* v. *De Caristo. supra,* 33 Cal.App.2d 666, 672. The opinion speaks of the ''mental condition'' to which the statute refers as meaning ''a mental weakness that is pathological and of some permanence.'' The words have no relevance to the facts of a case like that before us.

Moreover, we have examined the charges. We find facts therein pleaded which do plead a mental condition ''of some permanence.''

Respondent's pleading was adequate.

### THE USE OF HEARSAY AS PART OF AN EXPERT'S TESTIMONY

■ Dr. Stroud testified he had observed defendant, had examined her three times and ''found that she was suffering from a chronic emotional illness with mental symptoms best characterized as a diagnosis of schizophrenia, paranoid in type. I . . . concluded that this disorder prevented her from doing her job as a teacher.''

Examination of the patient was not the entire basis of his opinion. Before he had seen Mrs. Porini at the first interview, the school authorities had sent Dr. Stroud a tape recording, some letters and other material. He stated he had received altogether ''quite a dossier'' that was ''voluminous.'' He testified: ''Q. That helped you to diagnose her condition, did it not? A. Well, as I say, it gave me a background for asking her certain questions about her situation. To that extent, part of the present complaint, it would be a help, yes.''

The material was not introduced into evidence. The tape was not played. Characterization of the nature of the material was not made by the psychiatrist.

A motion to strike the doctor's testimony was denied.

A witness qualified as an expert is permitted certain latitude with reference to the use of hearsay. Experts frequently express opinions based at least in part upon matters not perceived by or personally known to them. For example, a doctor takes a history from his patient as a part of his examination, and that history is stated as a necessary basis of his diagnosis. Those histories are hearsay.[4] California courts have recognized

---

[4]The California case originally permitting the patient's ''history'' to be related by the doctor, *Tierney* v. *Charles Nelson Co.* (1937) 19 Cal.App.2d 34, stated at page 38 [64 P.2d 1150]: ''Such evidence is not admitted for the purpose of establishing the facts contained in the

such hearsay as admissible. (*People* v. *Wilson* (1944) 25 Cal.2d 341, 348 [153 P.2d 720].) This court has recently recognized the propriety of the expression by an expert of an opinion based upon information without regard to the information's admissibility in evidence in *People* v. *Chapman* (Apr. 1968) 261 Cal.App.2d 149, 178 [67 Cal.Rptr. 601]. Therein we stated (at p. 178): "Current California law gives the trial court discretion to weigh its probative value as a partial basis for the expert's opinion against the risk that the jury might improperly consider it as independent proof of the facts recited therein. [Citations.]" The statutory requisite in the California Evidence Code for the admission of opinions based on hearsay is that the hearsay be "of a type that reasonably may be relied upon by an expert in forming an opinion upon the subject to which his testimony relates. . . ." (Evid. Code, § 801, subd. (b).) The same subsection refers to "matter . . . made known to him at or before the hearing, whether or not admissible." The comment under this section says that the question whether such opinion-hearsay will be admissible or inadmissible from the lips of the expert "varies from case to case. In some fields of expert knowledge, an expert may rely on statements made by and information received from other persons; in some other fields of expert knowledge, an expert may not do so." It is stated further: "The variation in the permissible bases of expert opinion is unavoidable in light of the wide variety of subjects upon which such opinion can be offered. In regard to some matters of expert opinion, an expert *must*, if he is going to give an opinion that will be helpful to the jury, rely on reports, statements, and other information that might not be admissible evidence. . . .

"It is not practical to formulate a detailed statutory rule that lists all of the matters upon which an expert may properly base his opinion, for it would be necessary to prescribe specific rules applicable to each field of expertise."

Although the opinion of an expert medical witness based upon declarations made by the patient is admissible under well settled California law, and opinions based upon information received from persons within the medical profession have also been accepted in California (see cases collected in

statement of the patient, but it is admitted to show the basis for the physician's opinion . . . ." If, however, the physician's opinion rests in part upon a belief in the history given and the fact finder is asked to receive the statement as truthful, it cannot, in our opinion, be said not to be hearsay.

Witkin, Cal. Evidence (2d ed. 1966) § 410, p. 368) and in other jurisdictions (Katz, *The Admissibility of Expert Medical Testimony Based in Part Upon Information Received From Third Persons* (1962) 35 So.Cal.L.Rev. 193, 194-195), no California authority has been cited (and we have found none)[5] approving expert testimony based upon information received from lay third persons. The few cases approving the practice in other jurisdictions were grounded upon reasons of necessity under the facts of the specific case. (Katz, *op.cit. supra,* pp. 196-199.)

Referring to information from lay third persons received by *psychiatrists,* Mr. Katz, criticizing *Ingles* v. *People* (1931) 90 Colo. 51 [6 P.2d 455], observes (*op.cit. supra,* at p. 205): ". . . In as much as these professions deal mainly with subjective matters, information about the patient must come from sources other than the patient as well as the patient. The patient's history including his past and present environment must be explored to enable the doctor to properly diagnose and effectively treat the patient. The case history method is one procedure employed by psychologists and psychiatrists.

". . . .

". . . 'Where the law forbids the psychiatrist to rest his diagnosis on such hearsay material, it requires him to base his diagnosis on what from the scientific viewpoint are incomplete data—or run the risk of having his entire testimony thrown out.' "

This court, however, can see dangers in a pendulum-swing to a blanket rule endorsing acceptance of opinions based upon third party lay information; danger in any inflexible rule. A case-by-case determination italicizing the Evidence Code section 801 test of "reasonable reliability" seems as definitive as a reviewing court should attempt to become.

A new trial is indicated (unless another disposition is made of this matter). The determinations to be made, whether of proper use by the doctor of the hearsay or of admissibility of the doctor's opinion[6] notwithstanding his improper use of the

[5]In *Nelson* v. *Painless Parker* (1930) 104 Cal.App. 770, 778 [286 P. 1078], there is dictum to the effect that such information is inadmissible. But in that case it was held to be unprejudicial.

[6]The fact that an expert uses some inadmissible evidence in the giving of an opinion does not necessarily invalidate the opinion. It may go only to the weight to be given it. That determination is generally one addressed to the trial court in the exercise of a reasonable discretion. (*City of Gilroy* v. *Filice* (1963) 221 Cal.App.2d 259, 271 [34 Cal.Rptr. 368]; *People* ex. rel. *Dept. of Public Works* v. *Lipari* (1963) 213 Cal. App.2d 485, 493 [28 Cal.Rptr. 808].)

hearsay (if it was improper) are questions best left to the trial court to determine in the exercise of a sound discretion and in the light of evidence to be offered at the new trial.

The judgment is reversed.

Friedman, J., concurred.

Regan, J., concurred in the result.

A petition for a rehearing was denied August 8, 1968.