[No. D011734. Fourth Dist., Div. One. Jan. 28, 1992.]

RICHARD KORSAK, Plaintiff and Respondent, v.
ATLAS HOTELS, INC., Defendant and Appellant.

## Counsel

Stutz, Gallagher & Artiano, Robert E. Gallagher, Jr., Manuel F. Yvellez and Jack Sleeth for Defendant and Appellant.

Contos & Bunch, John R. Contos and Perry R. Fredgant for Plaintiff and Respondent.

## Opinion

**HUFFMAN, Acting P. J.**—Plaintiff and respondent Richard Korsak, M.D., was struck in the eye by a jet of water after a shower head fell off its pipe in the bathroom of a guest room Korsak and his wife occupied in a hotel owned and operated by defendant and appellant Atlas Hotels, Inc. (Hotel). Korsak sued Hotel for personal injuries, and a unanimous jury awarded him $450,900. Hotel appeals the judgment after the trial court denied its motion for new trial or for judgment notwithstanding the verdict. It claims the trial court committed prejudicial error in allowing Korsak's expert to testify regarding hearsay statements of hotel maintenance procedures, and in denying Hotel's motion for a new trial made on the same grounds.

We find the trial court abused its discretion by allowing the expert to testify to incompetent hearsay evidence of an informal survey the expert conducted about hotel maintenance practices. That evidence was the only testimony demonstrating Hotel had failed to meet the standard of care owed to its guests, since no witnesses on hotel maintenance, other than the unqualified expert and Hotel's own employees, were called. The court compounded the error by giving a jury instruction on the custom within the industry (BAJI No. 3.16), based solely on this hearsay evidence. On this record the error is manifestly prejudicial. Accordingly, we reverse and remand for a new trial.

## Factual and Procedural Background

On May 1, 1983, Korsak, a neurologist, and his wife were paying guests at the Hotel. Korsak was taking a shower in his guest room when the shower head detached itself completely from the water pipe, causing a jet of water to hit him in the left eye. At approximately 8 a.m. Korsak reported the accident to Hotel's front desk. A security guard came to the Korsaks' room to investigate the incident at approximately 11:25 a.m., when the Korsaks were about to leave Hotel to catch a plane. The guard offered to assist in obtaining medical help, which Korsak declined. The next day Korsak saw a physician, complaining about double vision. Korsak's vision did not improve, and on April 18, 1984, he filed this complaint for damages against Hotel.

In the course of discovery, Korsak learned Hotel had lost or misplaced the shower head, and amended his complaint with leave of court to add causes of action for spoliation of evidence.[1] The case was tried to a jury in September 1989. At the outset of trial, Hotel's motion *in limine* was granted to prevent Korsak's expert, Dr. Martin Taft, a qualified mechanical engineer, from testifying regarding hotel maintenance procedures. In granting the motion, the trial court stated that Taft would be allowed to testify as an expert mechanical engineer about the forces that brought about the failure of the shower head. It reasoned that Taft could testify the shower head should have been checked because of the mechanical forces operating on it, but not because other hotels were checking their shower heads more frequently.

According to Taft's testimony, he conducted some tests of a substantially similar shower head in the shower in his office, and drew some conclusions regarding the water flow rate and the force the water would have if the shower head fell off. He formed the opinion that the accident probably

---

[1] At the close of Korsak's case-in-chief the trial court granted Hotel's motion for nonsuit as to the causes of action for spoliation of evidence. That decision is not challenged on this appeal.

happened due to the shower head having previously come off and having been replaced incorrectly by some person or persons unknown, perhaps a guest or a hotel employee. He explained he had never been called upon before this case to determine what might cause a shower head to fall off during use. He did not profess any expertise in hotel management, had no experience with similar plumbing problems which may occur in hotels, and had no training or expertise in determining the recommended schedule of maintenance for such plumbing fixtures in hotels.

During his direct testimony, Taft stated that he decided to verify his conclusions from his experiments by calling several reasonably large hotels in the Los Angeles area to inquire about their maintenance practices. Hotel's attorney immediately raised a hearsay objection and an objection that the ruling on the motion *in limine* should prohibit the testimony. The court overruled the objections, stating that Taft would be allowed to explain the basis of his opinion. Taft then testified:

"THE WITNESS:  *Well, I must say at this point that I'm not pretending that I'm an expert on procedures used in every hotel. I just am not—that's not my field* but I certainly felt from my considerable experience with all kinds of products, going into all kinds of companies and most of them have some kind of a maintenance procedure, some way in which they maintain their equipment, I felt from my experience that I ought to at least find out how some of the hotels do it because that would—at least if I found that no hotel ever had a maintenance program, it would at least be something in my mind to be able to say, okay, that's what I found out.

"*But what I actually did find out was that the hotels that I did call, I didn't call very many of them, they all had some kind of a program* where they either had their hotel people, I mean the cleaning maid and so on who clean every day, if any of those maids saw something that was wrong with it, like it fell off or it was dripping all the time, they would call the maintenance people *but every one of them had a program where the plumbers or the engineers in the building, the technical people would go around.* Some of them went once every three months. Some of them went half a year or a whole year but all of them did come in, examine each shower head, take it apart, replace parts if it was corroded, if the, you know, the threads were worn, . . ." (Italics added.)

Taft then explained to the jury the limited influence he said his researches into Los Angeles hotel practices had had upon his opinion that a maintenance problem had caused the accident:

"So, in their [the hotels'] maintenance programs they are able to at least turn the water on, find that out, et cetera. That convinced me. It wasn't the

basis of my testimony because I would have said what I'm saying now anyway, that in this particular case there was a maintenance problem. That's what I think caused the accident. But it would be supportive if there was what I call preventive maintenance which means regularly at some schedule which I can't define. *Every hotel knows how often these things break down from their experience. They periodically and systematically go about and maintain them and maintain each one of the shower heads.*" (Italics added.)

In the defense case, to show its maintenance efforts in guest rooms, Hotel's staff members testified it was the duty of the housekeepers to regularly check the shower heads, clean the surface, and look for salt buildup, and, where problems were observed, have the shower head replaced and/or cleaned. The hotel staff also testified the building in which the room was located had been entirely refurbished within a year or two of the accident, after Hotel had acquired the building from a different company. Other than Hotel's employees, no lay or expert witness trained in hotel maintenance testified as to how often or under what circumstances shower heads should be removed, inspected and repaired, if necessary.

Based on Taft's testimony, Korsak's counsel requested and obtained a specific jury instruction regarding evidence of custom within the hotel industry, BAJI No. 3.16.[2] Counsel offered this explanation to the court:

"[Plaintiff's counsel]: There was limited testimony, your Honor, by Martin Taft not as hotel maintenance expert as we've already gone over but he did testify about his conversations with other hotels.

"THE COURT: I don't—okay. 3.16. . . ."

In closing argument, Korsak's counsel utilized both the instruction and Taft's testimony to support his theory of the appropriate custom in the industry and the appropriate standard of care. Counsel said:

"And you heard the mechanical engineer testify that as part of his investigation he had talked to other hotels. He doesn't proclaim to be a hotel maintenance expert but just to corroborate his finding and his conclusion that the failure to maintain or inspect these shower heads was the most probable cause of this accident he *talked to other hotels and found that they did have preventive maintenance programs. This hotel did not.* . . ." (Italics added.)

---

[2]BAJI No. 3.16, as given by the court, reads as follows: "Evidence as to whether or not a person conformed to a custom that had grown up in a given locality or business is relevant and ought to be considered, but is not necessarily controlling on the question whether or not he exercised ordinary care, for that question must be determined by the standard of care that I have stated to you."

Returning to the issue again, Korsak's counsel observed with regard to the expert: ". . . He said his opinion isn't based on that but, of course, it's just as the fact that *he talked to a couple of hotels. Again, we have preventive maintenance programs. We go in around routinely and periodically to check the workings of the machinery in the room and throughout the hotel. Atlas Hotels did not do that in this case.*" (Italics added.)

The jury rendered a verdict finding Hotel liable and awarding Korsak $450,900 in damages. Hotel then filed posttrial motions, arguing the trial court committed prejudicial error in allowing Taft, Korsak's mechanical expert, to testify regarding maintenance procedures at other hotels. Initially, the trial court stated it believed the verdict was excessive "in terms of monetary award." However, after a brief continuance and the court's review of the testimony of Korsak's economic expert regarding his lost wages to date and those expected in the future, the motions were denied. This appeal was timely filed from both the judgment and the denial of those motions.

## DISCUSSION

■ It is first necessary to observe that a threshold issue presented in this case is not seriously disputed: Korsak's expert Taft, a mechanical engineer, admitted he was testifying outside the realm of his expertise when he gave an account of his communications with several unnamed Los Angeles-area hotels about their usual plumbing maintenance practices, in connection with explaining his opinion on the need for such prescribed maintenance. Hotel's prompt objection on that basis (and on the basis of hearsay) was overruled at trial. Error on that ground is apparent on this record. (Evid. Code, § 720[3]; *Edwards* v. *California Sports, Inc.* (1988) 206 Cal.App.3d 1284, 1287 [254 Cal.Rptr. 170].)

We cannot inquire into the prejudicial effect of such error, however, without analyzing the dispositive issue presented by this record: Whether the expert Taft could properly testify on direct examination about otherwise inadmissible hearsay which he considered in the formation of his opinion. If the testimony was improperly presented to the jury, our next inquiry is whether any prejudice resulted.

In reviewing Hotel's claims that the trial court erred in permitting this testimony, we apply an abuse of discretion standard. (*Shamblin* v. *Brattain*

---

[3]Evidence Code section 720, in pertinent part, requires a person testifying as an expert to have "special knowledge, skill, experience, training, or education sufficient to qualify him as an expert *on the subject to which his testimony relates*." (Italics added.)

All statutory references are to the Evidence Code unless otherwise specified.

(1988) 44 Cal.3d 474, 478-479 [243 Cal.Rptr. 902, 749 P.2d 339].) ■ A trial court enjoys broad discretion in ruling on foundational matters on which expert testimony is to be based. (§§ 801, subd. (b), 802[4]; *Board of Trustees* v. *Porini* (1968) 263 Cal.App.2d 784, 792-794 [70 Cal.Rptr. 73].) However, the discretion to admit or exclude evidence is not unlimited. "The discretion of a trial judge is not a whimsical, uncontrolled power, but a legal discretion, which is subject to the limitations of legal principles governing the subject of its action, and to reversal on appeal where no reasonable basis for the action is shown. [Citation.]" (9 Witkin, Cal. Procedure (3d ed. 1985) Appeal, § 277, pp. 287-288; *Martin* v. *Cook* (1977) 68 Cal.App.3d 799, 807 [137 Cal.Rptr. 434]; *Frank E. Beckett Co.* v. *Bobbitt* (1960) 180 Cal.App.2d Supp. 921, 927-928 [4 Cal.Rptr. 833]; *Westside Community for Independent Living, Inc.* v. *Obledo* (1983) 33 Cal.3d 348, 355 [188 Cal.Rptr. 873, 657 P.2d 365].)

It should first be observed that expert evidence has become "increasingly important in modern litigation." (1 Witkin, Cal. Evidence (3d ed. 1986) The Opinion Rule, § 472, p. 444.) Unquestionably, expert witnesses can be very persuasive to jurors on topics unfamiliar to the layperson. (§ 801, subd. (a).) It is prejudicial error to exclude relevant and material expert evidence where a proper foundation for it has been laid, and the proffered testimony is within the proper scope of expert opinion. (*Reynolds* v. *Natural Gas Equipment, Inc.* (1960) 184 Cal.App.2d 724, 740 [7 Cal.Rptr. 879].) Conversely, the courts have the obligation to contain expert testimony within the area of the professed expertise, and to require adequate foundation for the opinion.

The usual rules governing hearsay evidence are the starting point of our analysis. ■ Such evidence is inadmissible at trial unless it falls within one of the recognized exceptions to the hearsay rule. (§ 1200 et seq.) "The chief reasons for excluding hearsay evidence are said to be: (a) The statements are not made under *oath*; (b) the adverse party has *no opportunity to cross-examine* the person who made them; and (c) the jury cannot observe his *demeanor* while making them. [Citations.]" (1 Witkin, Cal. Evidence, The Hearsay Rule, *op. cit. supra*, § 558, p. 533, original italics.)

■ However, when expert witnesses are called to testify to "assist the trier of fact," (§ 801, subd. (a)), the courts have interpreted the Evidence

---

[4]Section 801, subdivision (b) permits an expert to testify to an opinion "[b]ased on matter (including his special knowledge, skill, experience, training, and education) perceived by or personally known to the witness or made known to him at or before the hearing, whether or not admissible, that is of a type that reasonably may be relied upon by an expert in forming an opinion upon the subject to which his testimony relates, unless an expert is precluded by law from using such matter as the basis for his opinion."

Section 802 sets forth standards for an expert's statement of the basis of his or her opinion during testimony.

Code to permit some latitude to experts in utilizing sources of information in forming an opinion. (See § 801, subd. (b); *Buckwalter* v. *Airline Training Center* (1982) 134 Cal.App.3d 547, 553-554 [184 Cal.Rptr. 659].) Although the courts have rejected expert opinions "[w]here the basis of the opinion is unreliable hearsay," (1 Witkin, Cal. Evidence, The Opinion Rule, *op. cit. supra*, § 482, pp. 452-453, and cases cited), nevertheless, hearsay information of a type *reasonably relied upon* by professionals in the field in forming an opinion on the subject may be used to support an expert opinion, even though not admissible in court. (*Mosesian* v. *Pennwalt Corp.* (1987) 191 Cal.App.3d 851, 860 [236 Cal.Rptr. 778]; *West* v. *Johnson & Johnson Products, Inc.* (1985) 174 Cal.App.3d 831, 861 [220 Cal.Rptr. 437]; see 1 Witkin, Cal. Evidence, The Opinion Rule, *op. cit. supra*; § 477, p. 448.) The rationale for this rule has been stated:

"When the expert's opinion is not based on matter perceived by or personally known to him, but depends on information furnished by others, the opinion will be of little value unless the source is reliable. . . . [Citation of § 801, subd. (b).] [¶] The matters need not be admissible. . . : Many types of information which could not be directly produced as competent evidence are nevertheless commonly used by experts in forming their opinions. [Citations.]" (1 Witkin, *op. cit. supra*, at p. 448.)

Several factors that a trial court should take into account in ruling upon the propriety of particular foundational matters in expert testimony have been outlined by a noted commentator:

"It is suggested that the factors of *necessity* and relative *reliability* be given strong consideration. If, for example, an expert is using hearsay to support his opinion, it should be considered an improper matter unless the elements of necessity and indications of reliability are present. If there is no necessity for the use of hearsay and there is little indication of trustworthiness, a finding against reasonable reliance by an expert is justified. Whether a matter used by an expert consists largely of conjecture or speculation is another important consideration. The factors of *necessity, reliability,* and *speculation* or *conjecture* at least provide some guideposts for the judge in determining whether a proffered expert opinion satisfies the requirements of [Evid. Code, § 801] . . . ." (2 Jefferson, Cal. Evidence Benchbook (2d ed. 1982) § 29.3, pp. 1001-1002.)

Although experts are thus given considerable leeway as to the material on which they may rely, the rules governing actual communication to the jury of any hearsay matter reasonably relied on by an expert are more restrictive. Although experts may properly rely on hearsay in forming their opinions,

they may not relate the out-of-court statements of another as independent proof of the fact. (*Whitfield* v. *Roth* (1974) 10 Cal.3d 874, 893-896 [112 Cal.Rptr. 540 [519 P.2d 588]; *Mosesian* v. *Pennwalt Corp., supra,* 191 Cal.App.3d 851, 860.) Although an expert "may rely on inadmissible hearsay in forming his or her opinion [citation], and may state on direct examination the matters on which he or she relied, the expert may not testify as to the details of those matters if they are otherwise inadmissible [citation]." (*Continental Airlines, Inc.* v. *McDonnell Douglas Corp.* (1989) 216 Cal.App.3d 388, 415 [264 Cal.Rptr. 779]; see also *Grimshaw* v. *Ford Motor Co.* (1981) 119 Cal.App.3d 757, 788-789 [174 Cal.Rptr. 348].) In *People* v. *Coleman* (1985) 38 Cal.3d 69, 92 [211 Cal.Rptr. 102 [695 P.2d 189], the Supreme Court said with regard to an expert witness that ". . . he may not under the guise of reasons bring before the jury incompetent hearsay evidence." (See Annot., Admissibility of Testimony of Expert, as to Basis of his Opinion, to Matters Otherwise Excludible as Hearsay—State Cases (1991) 89 A.L.R.4th 456.)

■ Assuming that inadmissible hearsay utilized by an expert to form an opinion does make its way to the jury's attention, an inquiry into the prejudicial effect of such matter becomes necessary. The main consideration is the purpose for which the material was presented. Where the information is admitted for a purpose other than showing the truth of the matter asserted (e.g., notice to the defendant or as a basis of the expert opinion), prejudice is likely to be minimal and a limiting instruction under section 355 may be requested to control the jury's use of the information. (*West* v. *Johnson & Johnson Products, Inc., supra,* 174 Cal.App.3d 831, 861; *Mosesian* v. *Pennwalt Corp., supra,* 191 Cal.App.3d 851, 864-865; see Imwinkelreid et al., Cal. Evidentiary Foundations (1988) pp. 227-228.) However, where, as here, the jury is allowed to consider the hearsay evidence presented by the expert in connection with proof of the matter asserted (i.e., the applicable standard of care regarding hotel maintenance), the principles approved by the Supreme Court in *People* v. *Coleman, supra,* 38 Cal.3d at page 92, as summarized above, are violated, and prejudice is apparent.

■ Turning to an analysis of this record, the only information presented to the jury regarding the reasons for and the desirable frequency of maintenance procedures for shower heads (other than from Hotel's employees) came from the unidentified persons to whom Taft spoke at hotels in Los Angeles. There was no showing the information utilized by Taft was reliable, or that it was of the type normally used by mechanical engineers such as himself in forming expert opinions. Korsak did not show that the persons to whom Taft spoke were experts in their field, or that Taft's testimony on the point was necessary because no other such evidence could have been

gathered. Moreover, Hotel had no opportunity to cross-examine the hearsay declarants about the reasons for or extent of the maintenance practices they described. (§ 804 [generally providing a party the opportunity to cross-examine persons on whose opinion the testifying expert relied]; *Lynch Meats of Oakland, Inc.* v. *City of Oakland* (1961) 196 Cal.App.2d 104, 112 [16 Cal.Rptr. 302].)

Further, it does not appear that the information Taft presented resulted from any form of scientific study, survey, or investigation. We do not doubt there may be cases in which a qualified researcher could conduct a survey of some relevant form of activity and reliably report such results to a trier of fact or to another expert. (2 Jefferson, Cal. Evidence Benchbook, *op. cit. supra*, § 29.3 p. 1001.) Nothing in this record, however, suggests the expert relied upon any scientific sampling of the hotel industry. Rather, he made an unexplained, casual sampling of unknown sources within the "hotel business." The authenticity, reliability, or the representative nature of the responses are totally undeterminable based upon Taft's testimony.

We are not dissuaded from our conclusion that the jury should not have heard this evidence by Korsak's reliance on *Wallace* v. *Speier* (1943) 60 Cal.App.2d 387, 393-395 [140 P.2d 900] to support his claim there was no abuse of discretion here. While *Wallace* is an interesting case since it involves a broken shower head in a hotel room, it is distinguishable on its facts and procedural record. In *Wallace* the trial court had before it the testimony of plaintiff's experts, two plumbers, regarding the leaking problems that the fixture had. The person who repaired the fixture was called and a good deal of factual information was provided regarding its condition, its problems with leaks, and what type of maintenance should have been performed in that specific case. Under those circumstances of a properly laid foundation for expert testimony, the appellate court found no abuse of discretion by the trial court in permitting that evidence. (See Annot., Motel's Liability—Liability of Hotel or Motel Operator for Injury or Death of Guest or Privy Resulting from Condition in Plumbing or Bathroom of Room or Suite (1979) 93 A.L.R.3d 253.) Here, there was simply no testimony regarding the particular maintenance problem for this shower head or any defects in the general maintenance procedure followed by Hotel, save and except for the testimony of Taft regarding his inquiries of a few Los Angeles hotel-keepers.

We are also unpersuaded by Korsak's contention there was no prejudice here because Taft on direct examination claimed there were other bases for his opinion, and the hearsay was merely used by him to corroborate his impressions. Taft testified to no training or personal research that would

inform him about any procedures necessary to maintain hotel shower heads in a condition sufficiently safe to protect the hotel guests. Indeed, he admitted he had never dealt with such a problem before, and had no other reliable data upon which to base an opinion. Although he conducted experiments with a similar shower head in his office, and concluded there must have been some removal and replacement of the failed shower head before the accident in this case, there was no effort to show any connection between this opinion and his related opinion that Hotel should have conducted regular maintenance "at some schedule which I can't define." Would such regular maintenance have discovered the hypothetical tampering with or ineffective repair of the shower head? Can we or the jury, led by the expert, properly engage in such speculation? (See *Edwards* v. *California Sports, Inc., supra,* 206 Cal.App.3d 1284, 1287.) The record shows the only possible foundation for Taft's opinion that faulty maintenance was the cause of the failure of the shower head was the unreliable hearsay which he gathered in his informal survey. That hearsay was thus presented to the jury to show the truth of the matter asserted, i.e., the applicable standard of care.

We therefore would not be justified in concluding there was no prejudice to Hotel from the erroneous admission of this evidence. At trial, counsel for Korsak did not merely use the hearsay to corroborate Taft's opinion. Rather, he requested and received a jury instruction on the custom and practice in the hotel industry regarding maintenance, and argued to the jury that Taft had learned about other hotels' maintenance programs, which were allegedly more complete than that shown in this case. The jury verdict indicates his theories were found persuasive. The trial court abused its discretion in allowing Taft to testify on that subject. This substantial monetary award cannot be predicated upon such incompetent evidence.

### DISPOSITION

The judgment is reversed and the case remanded for a new trial.[5]

Froehlich, J., concurred.

---

[5]The principal thrust of the dissent seems to be that the trial court erred by not giving instructions on the doctrine of res ipsa loquitur and by granting a nonsuit on the cause of action for spoliation. The reasoning seems to be since the trial court committed the alleged major errors impacting Korsak's case, we should not be overly concerned with the effect on Hotel of the erroneous admission of Taft's testimony regarding hotel maintenance. We reject that reasoning and observe only that Korsak has not complained on appeal of either of the alleged major errors deemed so significant by the dissent. In fact, neither issue was raised or briefed by either party. We therefore decline to join our dissenting colleague in speculating as to the effect of such alleged errors.

**NARES, J.**—I respectfully dissent. The majority, in determining an evidentiary issue requires reversal, has stood this case on its head. The only prejudicial error demonstrated by this record was suffered by respondent Korsak, and not appellant Atlas Hotels, Inc. (Hotel).

In this case, Hotel conveniently lost the admittedly defective shower head before it could be inspected by Korsak's expert. The trial judge refused to allow evidence that another shower head had fallen off in the same building. Finally, when Korsak's trial attorney offered jury instructions (BAJI Nos. 4.00 and 4.03) on res ipsa loquitur, they were refused. The trial judge responded to a request to argue the point as follows: "I've been on the bench over 17 years. I've given the res ipsa loquitur instructions twice. So, if you want to argue, go ahead. This is not a res ipsa case." After argument the judge confirmed his determination to refuse res ipsa instructions on the ground the shower head was not under the exclusive control of Hotel, as Korsak had rented the hotel room for a week. Yet despite every one of these adverse rulings, the jury found Hotel negligent, and awarded damages to Korsak.

Where the result below is right, an appellate court should affirm whether or not the ground upon which the trial court relied was correct. (*D'Amico* v. *Board of Medical Examiners* (1974) 11 Cal.3d 1, 19 [112 Cal.Rptr. 786, 520 P.2d 10]; *Davey* v. *Southern Pacific Co.* (1897) 116 Cal. 325, 329 [48 P. 117].) A hotel owner owes his guests protection from personal injury. (Rest.2d Torts, § 314A; *Peterson* v. *San Francisco Community College Dist.* (1984) 36 Cal.3d 799, 806 [205 Cal.Rptr. 842, 685 P.2d 1193]; *Wallace* v. *Speier* (1943) 60 Cal.App.2d 387, 391 [140 P.2d 900.) Korsak was injured in his hotel room when a shower head fell off a water pipe. Three observations are appropriate: (1) This kind of accident does not normally occur absent negligence on someone's part; (2) the instrumentality, a fixture in a hotel room, was (contrary to the trial judge's ruling) as a matter of law in the exclusive control of Hotel; and (3) Korsak did nothing wrong. On these facts the jury should have been instructed that either they *may* draw an inference of negligence by Hotel (BAJI No. 4.02) or (where, as here, the three elements are not disputed) they *must* find such negligence (BAJI No. 4.03). (*Ybarra* v. *Spangard* (1944) 25 Cal.2d 486, 489-493 [154 P.2d 687, 162 A.L.R. 1258].)

As Hotel points out, the trial court refused Korsak's request to instruct on res ipsa loquitur. On these facts such refusal was error. If the trial court had correctly instructed the jury, however, the result would have been the same: judgment for Korsak. Accordingly, the judgment should be affirmed, rather than reversed. (Code Civ. Proc., § 906.)

There can be no dispute that Hotel owed Korsak a duty of maintaining its premises in a reasonably safe manner. (*Stowe* v. *Fritzie Hotels, Inc.* (1955) 44 Cal.2d 416, 421 [282 P.2d 890].) The only issue is whether Hotel breached that duty by failing to maintain and inspect the shower head, which its own employee admitted was defective. This case is indistinguishable from *Wallace* v. *Speier, supra,* 60 Cal.App.2d at page 390, in which testimony by two plumbers relative to frequency of inspections of shower heads and the length of time these fixtures should be used was unsuccessfully challenged by hotel owners. Hotel's challenge here should similarly be unsuccessful. Admission or rejection of expert testimony lies largely within the discretion of the trial court, and an appellate court should not disturb the trial court's action unless there is a clear showing of abuse (*Reynolds* v. *Natural Gas Equipment, Inc.* (1960) 184 Cal.App.2d 724, 739 [7 Cal.Rptr. 879]) and "it appears that there has been a miscarriage of justice." (*Denham* v. *Superior Court* (1970) 2 Cal.3d 557, 566 [86 Cal.Rptr. 65, 468 P.2d 193].) Even conceding that permitting Korsak's expert witness to mention that some hotels had an inspection program was such an abuse, there remains the question of prejudice. It is utterly impossible to imagine that the jury in this case was swayed in its determination of liability by the testimony set out in the majority opinion.

The majority ignores the rulings adverse to Korsak, and disregards the testimony of Hotel's own employees that no one inspected the shower head because "[i]t would have taken a wrench to do that." Instead, the majority limits its review to testimony by Korsak's mechanical expert regarding his telephone calls to some unnamed hotels about maintenance practices. As the expert witness testified, these calls were made *after* he had formed the opinion that, but for the absence of proper maintenance, this type of accident could not have occurred. According to the trial court, this limited testimony did not violate the ruling in limine prohibiting this expert from testifying regarding the custom and practice in the hotel industry. I see no reason to challenge this determination, nor in any event to find prejudicial error therein.

Where, as here, a defendant deprives an injured plaintiff of the means of establishing the fact an admittedly defective shower head was the only cause of substantial damage to the plaintiff, I would affirm the judgment, because whether or not one calls the shifting of the burden of proof res ipsa loquitur, Hotel was in a better position than Korsak "to offer evidence on the issue of causation, and fairness required that the burden of proof be shifted to [it]." (Witkin, Significant Developments in California Substantive Law 1970-1990 (1991) p. 281. See, e.g., *Ybarra* v. *Spangard, supra,* 25 Cal.2d at pp. 490-494; *Haft* v. *Lone Palm Hotel* (1970) 3 Cal.3d 756, 774 [91 Cal.Rptr. 745

[478 P.2d 465]; and *Vahey* v. *Sacia* (1981) 126 Cal.App.3d 171, 178-179 [178 Cal.Rptr. 559].) Hotel failed to produce any competent, admissible evidence it ever inspected or performed maintenance on this shower head at any time. The jury was most unlikely to have been influenced by the testimony relied upon for reversal by the majority, and had it been correctly instructed, would necessarily have reached the same result now challenged. On these facts the proper result is to affirm the judgment, and not reverse. Therefore, I dissent.

Respondent's petition for review by the Supreme Court was denied April 15, 1992.