Filed 6/14/13  P. v. Mungia CA2/7

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| THE PEOPLE, | B237322 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. NA088362) |
| v. | |
| JOSE MUNGUIA, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Tomson T. Ong, Judge.  Affirmed.

Lori-Ann C. Jones for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, Eric E. Reynolds and Rene Judkiewicz, Deputy Attorneys General, for Plaintiff and Respondent.

_____

Jose Munguia (appellant) was convicted by a jury of three counts of rape (Pen. Code, § 269, subd. (a)(1)),[1] three counts of oral copulation (§ 269, subd. (a)(4)) and three counts of sexual penetration (§ 269, subd. (a)(5)), all committed against a child under the age of 14 and more than seven years younger than appellant. Appellant was sentenced to 135 years to life in prison. He appeals, contending the trial court abused its discretion in refusing to allow testimony from the victim's treating physicians, in allowing the prosecution's child molestation expert to testify beyond the scope of her expertise, and in making certain evidentiary rulings. He also contend the cumulative effect of the evidentiary rulings was prejudicial. We find each of these contentions to be without merit and affirm the judgment.

## FACTUAL & PROCEDURAL BACKGROUND

In the 1990s, appellant moved in with Raquel M. (Mother) and her two daughters, Claudia V. (then two years old) and Julia C. (then 13 years old). Julia had her own bedroom. On two occasions, she woke up at night after someone touched her genital area. The second time it happened, she saw appellant crawling out of her room. When Claudia was five years old, appellant would come into her bedroom when Mother was at work. He would pull off her clothing and underwear and force her to kiss his penis and penetrated her vagina with his fingers. On one occasion, he raped her from behind. The forcible oral copulations and rapes continued almost daily through 2nd grade, while Mother was at work.

In 2000 or 2001, when the girls went on a day trip to the lake with appellant and Mother, Julia saw appellant putting his hand in Claudia's bathing suit. Claudia told Julia what appellant had been doing to her, and Julia told Mother. Appellant was kicked out of the house.

---

[1]     All subsequent undesignated statutory references shall be to the Penal Code.

2

In 2001 or 2002, appellant moved back in when Claudia was in 4th grade. Appellant put his fingers in her vagina, raped her, and forced her to orally copulate him. The next day, Claudia found blood in her underwear. After Claudia had completed 4th grade, appellant snuck into her room and attempted to molest her again. After a while he stopped coming into her room. She did not see him until the preliminary hearing.

Mother testified she worked nights. Appellant did not have a regular work schedule. Mother and appellant have two other children. Mother remembered Julia telling her at the lake that appellant "touched" Claudia, but did not know what Julia meant. When Claudia was six years old, Mother asked her what was wrong and Claudia would cry and say "Nothing, nothing." She remembered checking Claudia's underwear several years ago and finding a brownish liquid. They reported the assaults to the police in November 2010.

Long Beach Police Officer Robert Cruz testified he took a report from Claudia in November 2010. He did not initiate a sexual assault exam because the alleged acts had taken place years earlier.

Long Beach Police Officer Kimberly Groves testified she did not meet with appellant before the charges were filed and that she did not personally arrest him. She interviewed appellant with an interpreter.

Appellant testified in his own defense. He denied any sexual contact with Julia or Claudia. He said he was angry at Mother for being unfaithful and she was angry at him for missing child support payments.

*DISCUSSION*

*1. Refusal to admit testimony of medical examination*

Prior to trial, defense counsel requested to call two doctors who had allegedly examined Claudia in 2001. Due to a flood, the records from their practice were no longer in existence and they had no independent recollection of examining Claudia. Defense counsel wanted the doctors to explain what they would normally have done if there had been evidence of sexual or child abuse. The prosecutor stated Mother apparently had no recollection of telling the doctors that her daughter had been molested, and only took her

3

to see the doctor for a discharge. Officer Cruz's interview notes stated that Mother told him that she took Claudia to the doctor and the doctor said there was nothing wrong with her. The court excluded the doctors' testimony under Evidence Code section 352, stating "The probative value is none. Unfair or undue prejudice is the inference that there was reporting in this case. . . . The doctor cannot report something that the mother didn't tell him. . . . [T]ouching does not necessarily result in bruising or anything of that sort. . . . It's likely to create confusion in front of the jury in this particular case. The evidence is what it is and the probative value is minimal to none. The unfair prejudice or confusion is significant."

When Mother was on the stand, she testified that Julia told her that appellant had "touched" Claudia. Defense counsel then asked, "Did you understand that statement [from Claudia that appellant had touched her] to be one—Did you understand that statement was one of a sexual nature?" The prosecutor objected on the ground that the question was leading, the court sustained the objection, and the court asked, "What did you understand that statement to mean?" Mother responded, "Well, I asked because I didn't understand what she meant, and I don't think my daughter knew how to explain it well either. She just said he touched her[]." The court then responded, "Next." When asked if she ever saw blood in Claudia's underwear, Mother testified that she took Claudia to get medicines for a "brownish kind of liquid like bloody or something" in her underwear.

Appellant contends that the court erred in not allowing him to ask Mother to clarify whether she thought the "touching" was of a sexual nature, because if she had, "then surely she communicated her concern to the doctors prior to the medical examination." Appellant also contends that questioning of the doctors should have been allowed, and finally, that the refusal to admit evidence of the medical examination deprived him of his constitutional rights to due process.

The trial court has the discretion to exclude evidence under section 352 if its probative value is outweighed by the probability of undue prejudice. On appeal, we will

4

not disturb the trial court's ruling unless it abused its discretion. (*People v. Rodrigues* (1994) 8 Cal.4th 1060, 1124.)

The trial court did not err in refusing to allow appellant to call the doctors as witnesses. They had no recollection of examining Claudia and had no records with which to refresh their recollection. In addition, their testimony about what they would have done had Claudia reported molestation was purely speculative since there was no evidence that Mother reported molestation. Mother testified only that she took Claudia to get medicine for a discharge. Officer Cruz said she told him she took her to the doctor because of a "touching," but Mother explained she did not understand what Claudia meant by a "touching." There was simply no evidence that Mother ever communicated to the doctors that Claudia had been sexually molested. There was no error in excluding the testimony of the doctors or further questioning of Mother.

Appellant's contention that he was denied due process is without merit. Appellant was allowed to, and did, testify. He was allowed to cross-examine Mother and Officer Cruz. Any further examination of those witnesses would not have resulted in admissible evidence. The exclusion of this testimony did not render the trial fundamentally unfair. (*People v. Partida* (2005) 37 Cal.4th 428, 651-52, citing *Estelle v. McGuire* (1991) 502 U.S. 62, 70.)

2. *Expert Witness testimony*

Appellant contends that the court erred in allowing Melissa Wheeler to testify as an expert because she was not a doctor, psychiatrist or psychologist, nor did she have any specialized training in those fields. He also claims her testimony was without foundation, speculative, and beyond the scope of her expertise. He argues the testimony was prejudicial because it indirectly bolstered the victim's testimony and justified her failure to report the assaults in a timely manner.

Evidence Code section 801 defines expert testimony as "(a) Related to a subject that is sufficiently beyond common experience that the opinion of an expert would assist the trier of fact; and (b) Based on matter (including his special knowledge, skill, experience, training, and education) perceived by or personally known to the witness or

made known to him at or before the hearing . . . that is of a type that reasonably may be relied upon by an expert in forming an opinion upon the subject to which his testimony relates. . . ." Evidence Code section 720 provides that a person is qualified to testify as an expert witness "if he has special knowledge, skill, experience, training or education sufficient to qualify him as an expert *on the subject to which his testimony relates*." (Italics added).

Rulings by the trial court on the qualifications of an expert witness, including foundational requirements, will be reversed on appeal only if there is abuse of discretion. (*People v. Ramos* (1997) 15 Cal.4th 1133, 1175; *Korsak v. Atlas* (1992) 2 Cal.App.4th 1516, 1526.)

Wheeler testified that she had been a registered nurse for 30 years and was currently the owner and director of a private company called Forensic Nurse Specialists. Her company had contracts with law enforcement agencies, hospitals, municipalities, and universities for sexual assault forensic examination. She personally supervised seven sexual assault centers, one of which is in Long Beach. She had personally examined victims, trained new nurses, reviewed cases for accuracy and had testified in court. She had been trained as a forensic child interviewer and performed interviews for the court. Over the last 18 years, she had seen over 13,000 victims.

Appellant's counsel objected to the extent of her expertise when she testified that a child who is traumatized may develop a psychological phenomenon called "disassociation." The court overruled the objection and asked Wheeler to explain "disassociation." She then described children closing their eyes or looking away when they disclosed the abuse. The prosecutor then proceeded to ask Wheeler many questions about why a child will not disclose abuse for many years. Defense counsel's objections to this line of questioning were overruled. Finally, the prosecutor asked a hypothetical about a child who was abused at the age of five by a stepfather and then does not disclose the abuse until she is 19 and if that was consistent with Wheeler's experience. After defense counsel's objection was overruled, Wheeler replied that it was consistent.

Appellant concedes that Wheeler was qualified to testify about female anatomical structure, but contends she was not qualified to testify about psychological effects on victims. We disagree.

Wheeler had performed so many examinations of sexual assault victims that she had "occupational experience" in addition to basic educational and professional training as a nurse. (*Huffman v. Lindquist* (1951) 37 Cal.2d 465, 478.) It is hard to conceive of someone who would be more qualified to testify about the emotional state of rape victims and the psychological effect of rape. Even a psychiatrist with years of medical experience might not have examined as many rape victims. Wheeler had personally observed the characteristics and conduct of children who had been raped. Her observations qualified her as an expert to testify on the demeanor of children who had been abused and the tendency not to reveal the abuse. There was no abuse of discretion in admitting Wheeler's testimony.

*3. Other Evidentiary rulings*

Appellant contends that during several instances the court cut off inquiry into important matters affecting bias, interest and motive for testimony.

Appellant testified in his own defense, stating that he never touched Claudia or Julia. When he was living with Mother, he would go to work from 6:00 p.m. to 6:00 a.m. at a restaurant. Mother would leave for work at 2:00 p.m. When she was at work, Julia or Mother's son, Julio, would watch the other children. On cross-examination, appellant said Mother kicked him out of the house because they would always fight. He found out she was cheating on him. He said he thought Julia was an honest person, but he denied ever molesting her. The prosecutor asked appellant why he did not tell Detective Groves that he had been working and thus could not have committed the molestations. Appellant replied, "Never asked me." The prosecutor then asked several questions about his alibi but appellant's counsel objected each time and the court sustained the objections. Finally, the prosecutor asked appellant why he did not subpoena the owner of the restaurant to testify, and appellant said that the man no longer owned the restaurant. The prosecutor then questioned appellant why Julia would go to police, and after several

7

attempts to get an answer, the court interjected, and asked appellant, "You said that Claudia's mom cheated on you, right. . . . And you are saying she's angry, that's the reason she told Julia to go to the cops, right?" Appellant agreed. On redirect, counsel asked for clarification about why Mother was angry at him and appellant explained that it was "because they took away her child support."

Mother was re-called as a witness and testified that appellant's child support payments became inconsistent and then stopped. Appellant worked sporadically at one job and often did not pay the rent.

The defense called Detective Groves, and she testified that she interviewed appellant with an interpreter. When defense counsel asked if appellant denied molesting either Julia or Claudia, the prosecutor objected and the following bench conference occurred: "THE COURT: On the record, when the defendant makes an admission against penal or social interest that usually comes in when he tries to exonerate himself. That is called self-serving hearsay. There is no inconsistency between this testimony and what you are about to offer through the detective. So any hearsay objection? [¶] [Defense Counsel]: The rule of completeness. . . . The prosecutor has asked about my client's statements and opened the door. So now I get to ask about my client's statements. [¶] THE COURT: I respectfully disagree. I don't think that's how the rule of completeness works. . . . Therefore, your exception is noted. It's overruled. [¶] [Defense Counsel]: I want to put something else on the record so the appellate court knows what I was going to ask and what I believe the detective is going to say. I believe that if I had asked the question that the court precluded . . . I believe the detective would have my client deny sexual[ ] abuse as to Julia. [¶] THE COURT: That would be considered self-serving hearsay."

Appellant argues that the trial court abused its discretion by not allowing further questioning and that he was denied due process by not being allowed to show that Mother was biased and that appellant denied the charges when questioned by Officer Groves.

We find no abuse of discretion and no denial of due process. Appellant was allowed to, and did testify, denying the charges. He explained he was working at nights

8

and thus could not have committed the crimes. He also explained he could not subpoena his employer because the employer no longer owned the restaurants. He was allowed to establish evidence about child support payments and jealousy by Mother. The jury was allowed to consider this evidence and evaluate appellant's credibility. Any additional testimony by Officer Groves would not have added new evidence.

*4. Cumulative Error*

Since we have determined that there was no error in the court's evidentiary rulings, appellant's contentions of cumulative error are without merit,.

*DISPOSITION*

The judgment is affirmed.

**WOODS, J.**

**We concur:**

**PERLUSS, P. J.**

**ZELON, J.**

9